## HILL v. THE PEOPLE.

INDICTMENT *for deliberate and premeditated homicide.* An indictment for murder in the common-law form is sufficient to support a conviction for deliberate or premeditated killing under the act of 1870. (8 Sess. 70.)

The words " malice aforethought " in the indictment are co-extensive in meaning with the words "deliberate and premeditated," and a charge that a homicide was committed with malice aforethought, comprehends a case of deliberate and premeditated killing.

CONSTRUCTION *of the act of* 1870 *relating to homicide.* The words " deliberate and premeditated " in the act of 1870, relating to homicide, refer to the intention of the accused at the time of the killing.

INTENTION *is matter of fact to be proved.* Under the act of 1870, the intention of the accused at the time of the killing is to be ascertained by the jury upon the evidence, and cannot be made the subject of legal presumption or inference.

INTENTION — *presumption of fact.* The intention of the accused may be inferred from the circumstances attending the homicide, and is therefore the subject of a presumption of fact.

Whether the intention be shown by evidence of antecedent menaces, former grudges, lying in wait, the means employed to effect the homicide or any other circumstance, the evidence is to be submitted to the jury to find the fact under the direction of the law.

A man shall be presumed to intend that which he voluntarily does, and an intention to take life is shown by the use of a deadly weapon.

So, also, if after a quarrel with deceased the prisoner went away and armed himself, and returned to the scene of the combat, intending to renew the altercation and quarrel with deceased, or to place himself in the presence of deceased with the purpose to provoke deceased to renew such quarrel and in such quarrel to make use of the pistol in repelling the assault of deceased, the intention of the prisoner to take the life of deceased is shown.

INSTRUCTION *as to presumption of intent.* It is the duty of the court to draw the attention of the jury to the points in the case and to presumptions of fact, which the law authorizes them to deduce from the evidence.

And in the present case, it was the duty of the court to lay before the jury the presumption of fact respecting the intention of the accused, and it was the duty of the jury to yield to its force and conclusiveness.

The jury should, however, be told that the presumption is to be drawn by them, and does not arise by implication of law.

An instruction, by which the jury were probably led to believe that they were relieved from considering the intention of the accused as a fact arising in the case, is erroneous.

This rule is not applicable to the ordinary inference of malice, which arises upon proof of killing, but to cases of deliberate or premeditated homicide, under the act of 1870.

REASONABLE DOUBT *in cases of homicide.*  In a criminal cause, where the
    defense is based upon the facts and circumstances growing out of the
    charge itself, the burden of proof remains on the government throughout,
    to satisfy the jury of the guilt of the defendant.

In such case it is error to charge the jury that circumstances of mitigation,
    justification or excuse, must be established by a fair preponderance of tes-
    timony, and that doubt as to whether the killing was in heat of blood or
    with malice, would not be sufficient to acquit of the charge of murder.

## *Error to District Court, Arapahoe County.*

THE indictment was in the common-law form for murder.

At the trial, James Whitsell testified : That an alterca-
tion occurred between the prisoner and the deceased, Elija
Williams, at a saloon in Denver, on the evening of the 15th
of July, in which harsh words were used but no blows were
struck ; the prisoner went away and returned after an ab-
sence of half or three quarters of an hour with a pistol ; that
prisoner said to deceased, "you d——d black s—n of a
b——ch, I am ready for you now ;" that one George Lyon
seized Hill, and a struggle ensued in which deceased partici-
pated, and the contending parties passed into a back room,
where the shooting took place. Witness did not see the
shooting ; he testified that the deceased was not armed.

Thomas J. Martin gave the following account of the second
altercation between prisoner and deceased. When Hill came
in I heard him say to Elije, " You've called me a black s—n
of a b——h," and Elije says "Yes, and what are you going
to do about it ;" Hill says to Williams, "If you don't take
it back I'll hurt you ;" Williams jumped up from his seat
and started towards Hill ; Hill drew a pistol from his coat
pocket and says to Elije, "If you don't stay back I'll hurt
you ;" George Lyon caught Hill by this time and pushed
him into the billiard room, drew the door to between him
and Williams, and Mr. Thompson catched Williams in the
opposite room. Elije pulled Thompson loose from him and
jerked the door open ; George Lyon says to Elije, " Why
don't you go away and let him alone ;" George still had
Hill, holding him, and Elije still made way toward Hill,
and George let go Hill and started toward bar-room to

call the proprietor of the house; before either of 'em got back from bar-room Hill fired a shot; in course of a minute or so after the shot was fired Williams clutched Hill, and they tusseled a minute or so, and Thompson tried to part 'em; finally, either he parted 'em or Williams let go, I ain't certain which, and walked off from him. He then sat down on the floor first, then he laid down on flat of his back; that is, Williams; he said in a minute or so after he laid down, "Who done it?" and immediately died; after they were separated, Hill immediately left the room and went out at the back door; Hill hit Williams when he shot; the shot hit Williams, and I believe it hit him in the point of the heart, I am not certain; I didn't examine Williams; he died three or five minutes after the shot; I believe Williams wasn't hurt any other way than by the shot; I don't know, and saw pistol which Hill had; it was a smallish seven-shooter; this shooting occurred in Arapahoe county, I believe, Colorado territory.

Harrison Bozier testified: That prisoner said to deceased, when he returned with the pistol: "You d—— m s—n of a b——h, I am here;" that deceased then started toward prisoner, and a struggle ensued, during which the fatal shot was fired.

George Lyon testified: That he took the prisoner into the back room and fastened the door, and that deceased broke through the door and said, "Where is the d——d nigger; I will kill him." Prisoner told deceased to keep away; deceased then sprang at prisoner, and prisoner fired the shot.

Ira Thompson testified: That when prisoner returned, deceased said to him, "Hill, you back here;" prisoner said, "I don't want you to speak to me, you called me a s—n of a b——h, didn't you;" deceased said "Yes, what are you going to do about it;" prisoner said deceased was a s—n of a b——h; deceased rose from his seat, jumped on the top of the table and said, "G—d d——n you, I will kill you;" witness said, "Williams, don't hit that man;" deceased said, "G—d d——n the nigger, I will kill him." Lyon then

took prisoner out and witness caught hold of deceased ; deceased broke away from him and went into back room ; a struggle followed between prisoner and deceased, during which deceased forced prisoner against the wall, and raised his hand to strike him, when the prisoner fired his pistol.

The testimony was voluminous, and it is unnecessary to insert all of it. Sufficient has been stated to show the principal points.

The charge to the jury was as follows :

If the homicide charged in the indictment has been established by the evidence to have been committed by the prisoner, the law in the first instance presumes that such killing was malicious in such sense as to hold the prisoner guilty of the crime of murder. The burden of showing circumstances of mitigation, justification or excuse is upon the prisoner, unless such circumstance sufficiently appears in the evidence on the part of the people.

If the jury find the prisoner guilty of murder, then they must also consider and find whether such murder was or was not premeditated.

If the jury believe, from the evidence, that prisoner and deceased, shortly prior to the occasion of the killing, had an altercation or controversy in which deceased used words of reproach or threats toward prisoner; that prisoner thereupon went away from deceased and returned presently armed with a pistol, intending to renew the altercation and quarrel with deceased, or to place himself in the presence of deceased with the purpose to provoke deceased to renew such quarrel, and in such quarrel to make use of the pistol in repelling the assault of deceased in case deceased should assault him ; and that thereupon the prisoner returning with either such purposes, the altercation was renewed either by prisoner or deceased, and that an assault and struggle followed, and that the shot whereby deceased came to his end was fired by prisoner during such struggle, then the jury ought to find prisoner guilty of premeditated murder, without reference to who gave the first offense or was the aggressor in that

particular occasion, and even though they also believe from the evidence that prisoner was in danger of life at the time of the shot fired.   The arming and returning in such case raises a presumption of a deliberate purpose to kill, and the law permits no man to take life even in defense of his own life in a quarrel which he himself has provoked.   And if the meeting of the prisoner and deceased upon the occasion of the homicide was but casual and not premeditated by prisoner, yet if prisoner, at such meeting, before any advance by deceased toward him, or any assault offered by deceased, made show of firearms, accompanying such exhibition by words of threatening toward deceased, then the jury will be justified in regarding the prisoner as the first aggressor, and as having provoked the assault of Williams which ensued, but in such case the jury should find the prisoner guilty merely, and not guilty of murder with premeditation.   But if the jury find from evidence that the meeting and altercation of prisoner and deceased, upon the occasion of the shooting, was not premeditated by defendant, as supposed by the foregoing instruction ; that the defendant, before the killing, attempted in good faith to evade the assault of deceased ; that, by reason of the fierceness of the assault, the prisoner, taking into account the relative strength and activity of himself and deceased, and the previous threats, if any, made by deceased, was justified in believing that he could not escape such assault, and that from such assault he was in danger of life or limb or great bodily harm, then prisoner was justified in taking the life of deceased to prevent such injury.

Prisoner was justified in believing himself unable to evade the assault of deceased, if a man of reasonable firmness placed in the same circumstances would have indulged the same belief.

It is not necessary to justify the homicide as done in self defense, that defendant should show that he was in actual danger of life or limb, or could not have escaped the assault of deceased ; it is sufficient if, under all the circumstances

then existing, a man of reasonable prudence and firmness would so have believed.

After the jury had retired they were recalled, and an instruction not here recited was withdrawn from the consideration of the jury by the court. The court then proceeded to instruct the jury further, as follows:

That the law, in the first instance, presumes every accused person innocent of the crime charged, but if the crime charged be murder, and if the killing be proven, then a presumption arises that said killing was malicious. The law, however, makes no presumption from the fact of the killing, that such killing was deliberate, but requires the deliberation of the accused to be proven beyond a reasonable doubt before he can be found guilty of premeditated murder. But the presumption of malice which arises from the fact of the killing, devolves upon the accused the burden of showing to the satisfaction of the trial jury all circumstances of mitigation, excuse or justification, unless such circumstances be shown in the prosecution, and unless upon consideration of all the evidence, both on the part of the people and the prisoner, it appears by a fair preponderance of proof that the killing was done in lawful self-defense upon apparent necessity in a quarrel not provoked by accused; they ought not to acquit, nor ought they to find guilty of manslaughter and not guilty of murder, unless by a like preponderance of proof it appears that the killing was done in the sudden heat of passion and not of malice aforethought.

It will not suffice to acquit the defendant, that the jury are in doubt whether the killing was or was not done in self-defense, or was or was not done in a quarrel unprovoked by accused. Nor will it suffice to reduce the killing to manslaughter, that the jury are in doubt whether such killing was of malice aforethought or in the sudden heat of passion and without malice.

The distinction between murder and manslaughter is as follows: *Murder* is an unlawful killing with malice aforethought, express or implied. *Express malice* is a deliberate intention to take life, and may be inferred from external

VOL. I. — 56

circumstances, or the conduct, actions and words of the party accused, at or about the time of the homicide, the weapon used, and the manner of the killing. *Implied. malice* is that malice which is inferred by the law from the fact of homicide, where no considerable provocation appears, or the circumstances of the killing show an abandoned and malignant heart. *Manslaughter* is an unlawful killing without malice, express or implied, and without any mixture of deliberation whatever. To reduce a homicide from murder to manslaughter, it must be shown by the person accused thereof (unless shown by the prosecution) to have been upon a sudden heat of passion, and upon a provocation apparently sufficient to make the passion irresistible, or it must be shown to have been done involuntarily in the commission of a lawful act, without due caution and circumspection.

The court further instructs, that the instruction that the jury "ought or ought not," upon a supposed state of facts, to find, for or against the accused, imports that the state of facts, supposed by the instruction, does or does not warrant the finding, which the jury are thereby told they ought or ought not to make, and that a finding in violation of such instruction will be deemed in law erroneous.

A "presumption" is an inference or conclusion from certain premises; presumptions are either conclusive or disputable; conclusive presumptions cannot be overcome by evidence; disputable presumptions may. The presumption of innocence in criminal cases is a disputable presumption, so, also, is the presumption of malice, which the law raises from the fact of a homicide proven. This latter presumption, as before stated, can only be overcome by a fair preponderance of testimony.

The jury found the defendant guilty of premeditated murder.

Section 36 of the criminal code, referred to in the opinion of the court, is as follows :

"The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the

homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide."

Section 1, of the act of 1870, is as follows: "That section 20 of said chapter 22 of the Revised Statutes of Colorado territory shall be hereafter construed so that the death penalty for the crime of murder shall not be ordered to be inflicted by the courts of the territory, unless the jury trying the case shall, in their verdict of guilty, also indicate that the killing was deliberate or premeditated, or was done in the perpetration, or attempt to perpetrate, some felony."

Messrs. BROWN & PUTNAM, for plaintiff in error.

Mr. M. A. ROGERS, district attorney.

Mr. Justice WELLS dissented from so much of the opinion as relates to the effect to be given to section 36 of the Criminal Code.

HALLETT, C. J. The act of 1870, which provides that the crime of murder shall not be capitally punished, unless the jury trying the case shall indicate in their verdict that the killing was deliberate or premeditated or done in the perpetration or attempt to perpetrate a felony, is peculiar in form, but in many respects substantially the same as the law of several States upon the same subject.

As early as 1794, in Pennsylvania, it was enacted that:

"All murder which shall be perpetrated by means of poison or lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder in the first degree; and all other kinds of murder shall be deemed murder in the second degree; and the jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree."

In substance, if not in form, this statute has been adopted in other States, and its meaning and effect are now pretty well understood.   Our legislature, with less method, perhaps, but with quite as much certainty, has raised a punitive distinction between murder committed with deliberation or premeditation, or in the perpetration or attempt to perpetrate a felony, and other murders, and this distinction, so far as relates to deliberate or premeditated killing, is substantially the same as that which, by the Pennsylvania act, separates the first and second degrees of murder.   In the Pennsylvania act, and in our own, certain distinctions are mentioned for the purpose of limiting the death penalty to cases falling within them, but nothing is added to or taken from the common-law definition of murder.   And this brings into view the first question presented in this record, which is the sufficiency of an indictment in the common-law form to support a conviction for premeditated murder.   It is conceded that the crime of which plaintiff in error has been convicted must be set out in the indictment, and if the words "malice aforethought" are not co-extensive in meaning with "deliberation and premeditation" this has not been done.   If these words had not acquired a technical meaning in the law, probably no doubt would exist upon this point.   We would then accept them in their primary sense, which is rather more comprehensive than "deliberation and premeditation," inasmuch as the latter words do not necessarily imply wickedness of purpose or evil design.   Said Lord Coke (3 Inst. 51): "Malice prepensed is when one compasseth to kill, wound or beat another, and doth it *sedato animo.* This is said in law to be malice aforethought, *prepensed, malitia precogitata.*"

The meaning of these words has been greatly amplified since the days of Coke, for, in the *Webster case,* 5 Cush. 304, it was said to include "not only anger, hatred and revenge, but every other unlawful and unjustifiable motive." But it is no objection to say that the words are more comprehensive than the words of the statute, if they are of equivalent meaning, because the whole must include all of

its parts. Before the statute of 1870, it was never doubted that a formed design and deliberate purpose to kill was provable under the averment of malice aforethought, and there is nothing in the statute to change the rule on this subject. In the *Webster case*, 5 Cush. 316, it was said that malice aforethought does not imply deliberation or the lapse of considerable time between the malicious intent to take life and the actual execution of that intent.

They do not *necessarily* imply deliberation or premeditation, because they have acquired a technical meaning in the law far beyond their primary and popular sense, and may be, and often are, taken to mean something other than premeditation and deliberation. The mother who exposed her child in the garden, and the workman who cast timber into the crowded street, are instances given in the books of criminal carelessness which the law denominates malice aforethought; but a homicide effected in either of these ways would not be regarded as deliberate or premeditated. Therefore the words of the statute, although not co-extensive in meaning with the words of the indictment, are, nevertheless, synonymous with them, and there can be no reason for using the former rather than the latter. Whart. Crim. L., § 1115.

The doctrine is not to be extended, however, beyond the reason which supports it, and, therefore, if the fact to be proved is not set out in the indictment no evidence can be received concerning it. We doubt the soundness of those decisions in which it is held that proof of a homicide committed in the perpetration, or in the attempt to perpetrate a felony, may be made under the ordinary common-law indictment, for these facts are not averred in such an indictment. 2 Bishop's Crim. Proc., § 562, *et seq.*

Passing from the indictment, which we accept as sufficient, no argument will be required to show that the words "deliberate and premeditated" refer to the specific intent with which the act is done. They are used to denote the action of the mind, and involve the idea of thought and reflection.

A deliberate or premeditated act is one which is done upon a formed design, and with a direct purpose to accomplish it.

The act and intention must coincide, but, as to this coincidence, it was held in Pennsylvania to be sufficient that the accused intended to take life, although the act fell upon one not within the intention. *Hopkins* v. *Com.*, 50 Penn. 10. Mr. Wharton says (Whart. C. L., § 1084) :

"The distinctive peculiarity attached by the statutes to murder in the first degree, however, is that it must necessarily be accompanied with a premeditated intention to take life. The 'killing' must be '*premeditated.*' Whenever, then, in cases of deliberate homicide, there is a specific intention to take life, the offense, if consummated, is murder in the first degree ; if there is *not* a specific intention to take life, it is murder in the second degree."

Accepting this distinction, not as establishing degrees, but as one which regulates the punishment under our statute, we will inquire in what manner the intention to take life is to be ascertained. And here it will be observed that the act of 1870, in terms, refers this question to the jury, the language of the act being that the jury shall indicate in their verdict that the killing was deliberate or premeditated. Juries act upon evidence, and hence we may conclude that the intention is matter of fact to be found by the jury upon the evidence. In support of this view, I find it laid down in *Roberts* v. *The People*, 19 Mich. 414, as a general rule, to which there are few if any exceptions, "that when a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury as matter of fact before a conviction can be had."

This is the rule in the States where degrees in the crime of murder are recognized, and deliberate and premeditated homicide is assigned to the first. *People* v. *Potter*, 5 Mich. 1 ; *Whitford* v. *Com.*, 6 Randolph, 722 ; *Bivins* v. *State*, 6 Eng. 455 ; *State* v. *Gillick*, 7 Iowa, 287 ; *State* v. *Dowd*, 19 Conn. 387 ; *People* v. *Sanchez*, 24 Cal. 17.

At common law, and under our statute, the presumption of malice arises upon proof of the killing, but the statute of 1870 distinguishes the cases characterized by deliberation and premeditation from others, and declares that the jury shall indicate the existence of such distinguishing characteristics. Of the correctness of the general proposition, that the intention with which the killing is done is matter for the consideration of the jury, there appears to be no doubt, and it would seem that this can never be made the subject of legal inference or presumption; and yet in some of the cases homicide, by means of a deadly weapon, appears to have been regarded as an exception to the rule, and Mr. Greenleaf states that the intent to murder is conclusively inferred from the deliberate use of such weapon. 1 Greenl. Ev., § 18.

A man shall be presumed to intend that which he voluntarily does, and where the act is necessarily destructive of life, it would be absurd to say that the actor did not intend to produce death. So, if a person deliberately use a deadly weapon in a manner likely to produce harm, upon every principle by which we may judge of the motives of men, we must say that he intends to destroy life. But we determine this psychological fact upon our experience of the operations of the mind; and, therefore, I think this is a natural presumption as distinguished from a legal presumption. It is an inference, approved by reason of such an infallible nature that the law recognizes and enforces it. Of natural presumptions Mr. Starkie says (3 Stark. Ev. 1245): "Many presumptions of this class are recognized by the law, and, therefore, in one sense, may be termed legal presumptions, which still, unless some degree of technical force and weight be given them beyond their mere natural operation, are properly to be ranked in this class. Recent possession of stolen goods, on a trial for larceny, is recognized by the law as affording a presumption of guilt; and, therefore, in one sense, is a presumption of law; but it is still, in effect, a mere natural presumption, for, although the circumstance may weigh

greatly with a jury, it is to operate solely by its own natural force, for a jury are not to convict on this or any other charge unless they be actually convinced in their consciences of the truth of the fact."

So, also, in Best on Presumptions, 45, mention is made of presumptions of fact recognized by law, first among which are those where the inference is one which common sense would have made for itself. I think that we may regard the presumption arising from the use of a deadly weapon, as of this class, so strong that it has often been mistaken for a presumption of law. "We find the same presumption spoken of by judges, sometimes as a presumption of law, sometimes as a presumption of fact; sometimes as a presumption which juries should be advised to make, sometimes as one which it was obligatory on them to make," etc. Best on Presumptions, 44.

The statute has not declared that homicide, effected by means of a deadly weapon, shall be punished with death, but deliberate or premeditated homicide is so punishable; therefore, the ultimate point which the evidence must extend to and establish, is not the use of a deadly weapon, but the deliberation or premeditation with which the fatal act is done, and whether the intention is shown by evidence of antecedent menaces, former grudges, lying in wait, the means employed to effect the homicide, or any other circumstances which may give assurance of it, I think that it is to be submitted to the jury to find the fact under the direction of the law.

How far the law will go in supporting, before the jury, a presumption of fact which it recognizes and enforces, is a question of some difficulty. The rule is given in Best on Presumptions, 48, as follows: "The terms in which presumptions of fact and mixed presumptions should be brought under the consideration of juries, by the presiding judge, depend on their weight, either natural or technical; when the presumption is one which the policy of law and ends of justice require to be made, such as the existence of moduses and other incorporeal rights, from unin-

terrupted usage, the jury should be told that they *ought* to make the presumption, unless some evidence be given to the contrary; it should not be put to them as a matter for their discretion, and the same rule seems to apply where the presumption is one of much natural weight and frequent occurrence; as where larceny is inferred from the recent possession of stolen property, etc.   In the case of presumptions of a less stringent nature, however, such a direction would be improper; and, perhaps, the best general rule is, that the jury should be advised or *recommended* to make the presumption."

To advise or recommend a jury to make a presumption, must, in many cases, be very nearly akin to an expression of opinion upon the weight of evidence, which, according to the construction placed upon our statute governing charges to juries, is prohibited by it.

The doctrine of presumption grew up under the common law which enjoined upon courts the duty of analyzing the evidence, and commenting upon the bearings, tendency and force of the particular facts, and the comparative weight and force of conflicting evidence.   1 Stark. Ev. 73.

The object of the statute in providing that courts should charge juries as to the law of the case only was to preserve the distinction between the functions of each, which, however commendable in itself, must not be carried so far as to defeat the administration of the law.

It is still the duty, as it always has been the practice, of our courts, to draw the attention of the jury to the points arising in the case, and to the presumptions of fact, which the law authorizes them to deduce from the evidence.   To guide the deliberations of a jury to a correct conclusion, without assuming their functions, is a delicate and arduous duty, which must be faithfully and intelligently performed by the courts in all cases.

A portion of the charge to the jury in this case was the following:

"If the jury believe, from the evidence, that prisoner and deceased, shortly prior to the occasion of the killing, had

an altercation or controversy in which deceased used words
of reproach or threats toward prisoner, that prisoner there-
upon went away from deceased and returned, presently,
armed with a pistol, intending to renew the altercation and
quarrel with deceased, or to place himself in the presence
of deceased with the purpose to provoke deceased to renew
such quarrel, and, in such quarrel, to make use of the pis-
tol in repelling the assault of deceased in case deceased
should assault him; and thereupon, the prisoner return-
ing with either such purposes, the altercation was renewed
either by prisoner or deceased, and that an assault and
struggle followed, and that the shot, whereby deceased
came to his end, was fired by prisoner during such strug-
gle, then the jury ought to find prisoner guilty of premedi-
tated murder, without reference to who gave the first offense
or was the aggressor on that particular occasion, and even
though they also believe, from the evidence, that prisoner
was in danger of life at the time of the shot fired. The
arming and returning, in such case, raises a presumption
of a deliberate purpose to kill, and the law permits no man
to take life even in defense of his own life in a quarrel
which he himself has provoked."

It will be observed that the intention of the accused to
take life is not mentioned in this part of the charge as a
fact essential to guilt, except as a presumption arising out
of the circumstances that the accused armed himself and
returned to the scene of the tragedy after the first interview.
Elsewhere the jury were told that they were to find pre-
meditation ; but as this fact is, in this portion of the charge,
distinctly predicated upon the arming and returning, it is
not probable that the jury accepted the former as a modifi-
cation of this statement. In the circumstances named by
the court, and in the character of the weapon used, there
was plenary proof of the intention of the accused to take
life, but, as I have attempted to show, this was for the con-
sideration of the jury. It was the duty of the court to lay
before the jury the presumption of fact as to the intention
of the accused arising upon these circumstances, and it was

the duty of the jury to yield to its force and conclusiveness. I think that the manner in which this duty was performed by the court is open to the objection, that the jury probably understood that they were relieved from the consideration of the intention of the accused as a fact in the case. It cannot be objected that the premeditation is made the subject of inference and presumption, because, usually, this fact cannot be proved in any other way.  2 Stark. Ev. 739.

But they should have been told that this presumption was to be drawn by them, and did not arise by implication of law.  *Graves* v. *The State*, 12 Wis. 593 ; *Methard* v. *The State*, 19 Ohio, 367.

I do not refer to the ordinary inference of malice, which, by the common law and our statute, arises upon proof of the killing, but to the premeditation and deliberation mentioned in the act of 1870, which by that act are directly submitted to the decision of the jury.  In all cases of intentional homicide malice is implied, and so it must have been here if the jury could find nothing to mitigate the offense.  But premeditation and deliberation is the subject of proof of which the government assumes the burden, and of this I think the jury were not sufficiently informed.

Another part of the charge presents a question which has been the subject of much learned discussion in the courts of this country, and appears to be still unsettled, although I think the weight of authority is opposed to the views of the district court.  The court charged that circumstances of mitigation, justification or excuse must be established by a fair preponderance of testimony, and that doubt as to whether the killing was in heat of blood or with malice, would not be sufficient to acquit of the charge of murder.

The doctrine of reasonable doubt was, however, applied to the crime of which the accused was convicted, and if the case were not to be tried anew, it might not be necessary to notice that portion of the charge which relates to the evidence required of the accused.  The charge is grounded upon section 36 of the Criminal Code, which, after proof of the killing by the government, in terms, casts upon the

accused the burden of proving circumstances of mitigation, justification or excuse, unless such circumstances appear in the evidence against him.   The law of homicide, as found in the Criminal Code, was evidently drawn from the common law, and probably this section was intended to preserve the common-law rule respecting malice in cases of homicide.   I think that the language accords with that used by the common-law writers upon the same subject, sufficiently to warrant this inference.   At all events it is noticeable that, by the statute as well as by the common law, if the circumstances of mitigation, justification or excuse are apparent in the testimony of the government, the accused is entitled to the benefit of the presumption of innocence, which demands that his guilt shall be made to appear beyond a reasonable doubt.   But it is said that, if these circumstances do not so appear, he must establish them by testimony outweighing that of the government.   Now, the circumstances attending an act give character to it, inasmuch as they evince the intention of the actor at the time of the fact.   Section 2, Criminal Code.   Usually, the proof of the killing will disclose the circumstances attending it, and the character of the crime is demonstrated by the same evidence which establishes it.   But if the government is able to make proof of the homicide, without more, and the accused is therefore compelled to give evidence of the attending circumstances, it seems to me that he ought not to be placed under greater hardship or subjected to a more rigorous rule than would have been applied, if the government had frankly presented the whole case to the jury.

The argument in the *York case*, 9 Met. 93, which is difficult to answer or to accept, proceeds no further than the case of homicide, without further proof on the part of the government, and it appears to me that there are unanswerable objections to the doctrine thus limited.   It often happens, as in this case, that several witnesses of a criminal act give different accounts of it and some of the testimony is more favorable to the accused than the remainder.

The government usually selects the testimony which

tends most strongly to conviction, while the accused relies upon that which is most favorable to himself. Shall it be said that in such case the testimony for the defense must outweigh the testimony of the prosecution?

The testimony of the accused may be supplemented by that of the government, or it may be sufficient to balance the opposing testimony; but if it is sufficient to raise a reasonable doubt of the guilt of the defendant in the minds of the jury, the presumption of innocence will operate in his favor. "However the rule may be in cases where the defendant sets up, in answer to a criminal charge, some separate, distinct and independent fact or series of facts, not immediately connected with, and growing out of, the transaction on which the criminal charge is founded, there can be no doubt that, in a case like the present, the burden of proof remains on the government throughout to satisfy the jury of the guilt of the defendant. It appears by the evidence, as stated in the bill of exceptions, that the justification upon which the defendant relied was disclosed partly by the testimony introduced by the government and in part by evidence offered by the defendant, and that it related to and grew out of the transaction or *res gesta,* which constituted the alleged criminal act." *McKee* v. *Com.,* 1 Ben. L. C.C. 297, and note; *State* v. *McClure,* 5 Nev. 132; *State* v. *Bartlett,* 43 N. H. 224; *State* v. *Flye,* 26 Me. 316.

If we except the statute in its common-law relations where the presumption of malice always encountered the presumption of innocence we shall not be able to approve the charge of the court below. Where the defense is based upon the facts and circumstances growing out of the charge itself, we cannot indulge the presumption of innocence and, at the same time, require the accused to establish those facts and circumstances by preponderance of testimony, because less evidence may be sufficient to engender a reasonable doubt of guilt.

In a case of less consequence we should hesitate to reverse a judgment for misdirection to the jury alone, but we cannot assume the grave responsibility of determining the

correctness of the verdict upon the evidence in a capital case. The judgment is, therefore, reversed and the cause remanded with directions to the district court to award a new trial.

*Reversed.*