## BABCOCK v. PEOPLE.

1. MOTION FOR CHANGE OF VENUE — PREJUDICE OF INHABITANTS.— A motion for change of venue on the ground of prejudice of the inhabitants against the accused, not supported by the requisite number of reputable citizens, is not sufficient.

2. DISCHARGING REGULAR PANEL OF JURORS — OPEN VENIRE FOR ANOTHER, WHEN NOT ERRONEOUS.— A panel of jurors drawn less than thirty days before the term need not be discharged for that reason; but the discharge of such panel, and the summoning of another by open *venire*, it not appearing why the panel was discharged, is not error.

3. NO DISCRIMINATION AGAINST ELIGIBLE CITIZENS OF ANY CLASS ALLOWABLE.— Counsel may request, in the presence of the presiding judge, or the judge himself may direct, that only good and lawful men be summoned as jurors. But to request the sheriff to discriminate in favor of or against any class of citizens eligible to jury duty would be a grievous wrong. Whether such intermeddling would be ground for reversal depends upon the circumstances of the case.

4. QUALIFICATIONS OF JURORS.— The court is the trier of the qualifications of jurors, and its decision on the ground of previously formed or expressed opinions will not be disturbed, except in case of gross abuse of such power.

5. EXCUSING JUROR FROM PANEL.— It is proper to excuse from the jury a person who is not a citizen of the United States and who has never declared his intention to become such.

6. EXAMINATION OF WITNESSES — WHEN LEADING QUESTIONS TO, AND CROSS-EXAMINATION OF, PARTY'S OWN WITNESS PERMISSIBLE.— Where a party is really surprised by the testimony of his own witness, it is in the discretion, and is often the duty, of the court to allow leading questions to be propounded; and, in an extreme case, a cross-examination of such witness by the party calling him should be permitted; but sound discretion must be exercised, lest the privilege be abused.

7. IMPEACHING ONE'S OWN WITNESS.— A party cannot be allowed to impeach his own witness by showing that his reputation for truth and veracity is bad.

8. CONTRADICTING ONE'S OWN WITNESS.— When a party, by one witness, has introduced certain testimony, he is not necessarily bound thereby, but may give contradictory testimony by another witness or witnesses, and may thereafter in argument claim the benefit of the more favorable portion of such contradictory testimony.

9. PROOF OF THREATS TO SHOW MALICE IN TRIAL FOR MURDER.— It is competent for the state, on a trial for murder, to show threats made by defendant against deceased as tending to prove the malice charged in the indictment.

10. SAME — WHEN PROOF OF THREATS MADE BY DECEASED AGAINST PRISONER COMPETENT EVIDENCE.— There being some evidence of a hostile act by deceased immediately before the commission of a homicide, evidence of threats by deceased against the accused is competent, though it does not appear that the threat was communicated. The length of time between the threat and the homicide does not destroy the competency of the evidence, though it may weaken its effect.

11. WHEN STATUTORY PROVISIONS MAY BE GIVEN AS INSTRUCTIONS IN MURDER CASES.— Sections 31, 32, 33 and 39, respectively, of the Criminal Code may be given as instructions when the killing is in an open manner and the plea of self-defense is relied on.

12. PLEA OF SELF-DEFENSE IN HOMICIDE — ERRONEOUS INSTRUCTION. It is error to charge the jury. upon a trial for murder, that, to justify homicide on the plea of self-defense, it must appear that the slayer had no other possible, or at least probable, means of escaping, etc.

13. ERRONEOUS INSTRUCTION CONCERNING MALICE.— It is error to charge the jury that, if they believe the killing was without any malice, deliberation or premeditation whatever, they should convict of murder of the second degree; and such charge must be considered erroneous, even when the conviction is murder of the first degree.

*Error to District Court of Garfield County.*

Mr. Jos. W. TAYLOR, for plaintiff in error.

THE ATTORNEY-GENERAL and Mr. H. RIDDELL, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The plaintiff in error, Herman C. Babcock, was defendant below. He was indicted, convicted and sentenced to

be executed for murder of the first degree at the October term, 1888, of the district court of Garfield county. Having obtained a *supersedeas* upon the writ of error from this court he asks a review of the record of such conviction, and a reversal of the judgment upon numerous assignments of error.

The motion for a change of venue, on the ground of the alleged prejudice of the inhabitants of the county against the accused, was not supported by the requisite number of reputable citizens, as provided by the act of 1885; nor does it appear that there was any abuse of discretion on the part of the court in not allowing defendant a longer time to prepare for trial. It does not appear that defendant asked for a continuance. The cause was set down for trial six days in advance; it does not appear that a postponement was asked for. In many of the counties of the state the time allowed for the term of the district court is only one or two weeks, and the court sits only once or twice a year. Hence it is often of great importance that the trial of a criminal case should take place at the term when the indictment is returned; otherwise witnesses might become scattered, and a failure of justice be thereby occasioned. It must not be inferred from this, however, that a really meritorious application for a change of venue or for a continuance should be denied.

The panel of petit jurors was drawn on September 3, 1888, and the *venire* issued thereon was made returnable as required by law on the first day of the next term, which was the 1st day of October following. We agree with defendant's counsel that there was no necessity for discharging such panel of jurors on the ground that the statute literally requires the drawing to be thirty days before the term. But we are not prepared to say that the discharge of the panel, and the summoning of another by open *venire*, as provided by statute in such cases, was an error requiring the reversal of the judgment. It

does not affirmatively appear why the panel was discharged. *Minich v. People*, 8 Colo. 440.

When a panel of jurors, grand or petit, is ordered to be summoned by the sheriff upon an open *venire*, it is not error for the district attorney or other counsel to request openly, in the presence of the presiding judge, nor for the judge himself to direct, that the officer charged with the selection of the panel shall summon only good and lawful men, for such is the command of the writ. But for any officer of the court or other person to request the sheriff to discriminate in such selection in favor of or against any class of citizens eligible to jury duty would be a grievous wrong, and the court should not tolerate such practices for a moment. Whether such intermeddling, if shown, would be ground for reversal would depend upon the circumstances of the case. In this case defendant's charge of such improper conduct is not sustained by the record.

Several persons called as jurors stated in substance, when examined upon their *voir dire*, that they had opinions or impressions previously formed or expressed with reference to the guilt or innocence of the accused, and that it would require evidence to remove the same; but that, notwithstanding such opinions or impressions, they could give the accused a fair trial and render an impartial verdict according to the law and evidence submitted on the trial. The statute of 1872 (Gen. St. § 1893) makes the trial court the trier of the qualifications of jurors when challenged on the ground of such opinions or impressions; and this court will not disturb the finding of the court thereon, except in case of gross abuse of such power. In this case we think the rulings of the trial court were entirely correct. That a person has an opinion or impression concerning the guilt or innocence of the accused which can only be removed by evidence is by no means conclusive of his disqualification to serve as a juror. *Solander v. People*, 2 Colo. 48; *Jones v. People*,

id. 351; *Mining Co. v. Bank*, id. 565; *Jones v. People*, 6 Colo. 452; *Railroad Co. v. Driscoll*, 12 Colo. 520.

It was quite proper that the court should excuse from the jury William Wood, when it was shown that he was not a citizen of the United States, and had never declared his intention to become such. Gen. St. § 1891; Acts 1885, p. 263.

John Marshall, a witness in behalf of the people, having testified concerning the shooting of deceased by the defendant, said, also, that deceased had dropped his cane and put his hand in his hip pocket just before the shooting, and that when witness came to the wounded man immediately afterwards his hand was still in his hip pocket. The district attorney, having shown by further examination of the witness that he had testified concerning the shooting at the coroner's inquest a day or two after the occurrence, proceeded to ask the witness if he had at the inquest stated anything about deceased's dropping his cane and putting his hand in his hip pocket, and other questions of like character. .These questions were objected to, on the ground that the district attorney should not be allowed to impeach or cross-examine his own witness. It is evident that these questions were propounded to the witness with the hope of modifying or breaking the force of his testimony.

How far a party may be allowed to go in an attempt to overcome the consequences of damaging testimony given by his own witness is a question of considerable difficulty. Questions of this character have engaged the attention of able jurists, as well as learned authors on the law of evidence. The doctrine of the common law, as sometimes stated, is to the effect that the party calling a witness recommends him as worthy of credit, and therefore cannot be permitted to impeach, cross-examine or discredit him in any way; also that, as a witness is presumed to be favorable to the party calling him, he must not be asked leading questions on his examination

in chief. Exceptions to these rules have long existed, and it may be doubted if in common practice they were ever rigidly enforced to the extent above stated. The tendency of recent legislation, as well as of modern decisions, has been to relax somewhat the rules of evidence, so as to afford better opportunity for the development of truth. Modern experience has also shown that a party may sometimes be deceived in the character and *animus* of a witness whom he has called, as well as in the testimony he is expected to give; and he learns after the witness begins to testify — a very inopportune time — that he has to encounter bitter and unscrupulous opposition where he had expected to receive only fair and honorable treatment. This may be evinced by reluctance or evasion on the part of the witness in answering questions, or by too great readiness in making or volunteering damaging statements contrary to his previous version of the matter. Under such circumstances, where a party is really taken by surprise at the conduct of his own witness, it is in the discretion, and is often the duty, of the trial court to allow a party to put leading questions to his own witness, as the only means of preventing an unwilling witness from concealing the truth by unsatisfactory or evasive answers; and in extreme cases, where it is apparent that a witness is giving testimony contrary to the reasonable expectation of the party calling him, such party should be allowed to cross-examine such witness, for the purpose of refreshing his recollection, with the view of modifying his testimony, or of revealing his real *animus* in the case. But while a party should, when the occasion clearly justifies it, be permitted to interrogate by leading questions or cross-examine his own witness, and to ask him if he has not theretofore made other or different statements from those he has just given in evidence, still sound discretion must be exercised, lest the privilege be abused. Neither upon reason nor authority can a party be allowed to impeach his own witness by

showing that his general reputation for truth and verac-
ity is bad in the community where he is known; nor can
a party, according to some authorities, be allowed to in-
troduce other witnesses to show that his own witness, at
another time, has made other or different statements
from those he has given in evidence on the trial.  As
neither of these modes of impeachment was attempted,
we need not pursue the subject further than to say there
was no error in allowing the district attorney to cross-
examine the witness Marshall in the manner he did.

It is scarcely necessary to state, in this connection,
that, when a party by one witness has introduced certain
testimony, he is not necessarily bound thereby, but that
he may give contradictory testimony by another witness
or witnesses, and may thereafter in argument claim the
benefit of the more favorable portion of such contradict-
ory testimony.  1 Starkie, Ev. 216; 2 Phil. Ev. 985; 1
Greenl. Ev. § 444; 1 Whart. Ev. § 549; *Bullard v. Pear-
sall*, 53 N. Y. 230; *Howard v. State*, 32 Ind. 478; *Mel-
huish v. Collier*, 69 E. C. L. 878.

It is competent for the state, on a trial for murder, to
show threats made by the defendant against the deceased
as tending to prove the malice charged in the indictment.
A question intended to elicit such evidence propounded
to the witness Borah, in behalf of the people, was ob-
jected to; but no reason being stated for the objection, it
was properly overruled.

On the defense evidence was given to the effect that
an angry alteration had occurred between the defendant
and the deceased four days before the killing, and that
deceased made threats against defendant at that time.
Defendant's counsel offered to show previous troubles
between the parties; but the court ruled that he could
not go back any further, and this ruling is assigned for
error.  The record of this offer is not full enough to in-
dicate clearly whether the previous troubles were of such
a character as to be material evidence in behalf of de-

fendant. But, in general, where such evidence is competent, a defendant should not be limited to so short a period in which to show threats made by deceased.

E. Nelson, a witness for defendant, testified to an altercation occurring between the defendant and the deceased nearly a year before the killing; and that immediately afterwards deceased said to witness, in substance, that he had had two quarrels with defendant, and that he would kill defendant some time, if he had to lie in ambush for him. Deceased had been drinking some at the time, though not a great deal. There being some evidence tending to show an apparently hostile movement by deceased immediately before the commission of the homicide, it was error to strike out this testimony, or to withdraw it from the consideration of the jury. The evidence was competent, though it does not appear that the threat was communicated to the defendant. The length of time between the utterance of the threat and the commission of the homicide does not destroy the competency of the evidence, though it may weaken its effect. *Davidson v. People,* 4 Colo. 145.

The court gave a number of instructions to the jury in the language of the Criminal Code, which, if they had been arranged in more systematic and logical order, could have been more readily understood. Sections 31, 32 (except the last sentence), 33 and 39, being sections 719, 720, 721 and 727, respectively, of the General Statutes, were thus given, and excepted to by defendant. As the killing was in an open manner, and the plea of self-defense was relied on, the giving of these instructions in this manner was not erroneous.

We are aware that in the case of *Hill v. People,* 1 Colo. 436, this court held that section 39 (section 36, as it then was) did not warrant the trial court in charging the jury to the effect that *the presumption of malice which arises from the fact of the killing devolves upon the accused the burden of showing to the satisfaction of*

*the jury, by a fair preponderance of the evidence, that
the killing was done in lawful self-defense or in a sudden
heat of passion, and not of malice aforethought, unless
the evidence on the part of the prosecution sufficiently
manifests that the killing only amounts to manslaughter
or that it was excusable or justifiable homicide.* This
charge was held erroneous, not because the statute was
given without proper explanation, but because an im-
proper explanation or construction was given to the
statute. The statute does not say, nor does it imply,
that when the killing is proved the burden devolves on
the accused of showing anything, *to the satisfaction of
the jury, by a fair preponderance of the evidence.* On
the contrary, the statute casts on the accused the burden
of showing circumstances of mitigation, or that justify
or excuse the homicide, without indicating the weight of
such showing; and hence, upon familiar principles of
criminal evidence, if the showing be sufficiently strong
to create a reasonable doubt of the guilt of the accused
as to any grade of offense included in the indictment,
the accused is entitled to the benefit thereof.

The precise question involved in this record was passed
upon by this court at the April term, 1881, in the case of
*Dunham v. People,* opinion by Mr. Justice BECK, not re-
ported. In that case the lower court, among other
instructions to the jury, gave section 39 without com-
ment, and the defendant was convicted of murder. De-
fendant's counsel excepted to such instruction, assigned
error thereon, and discussed the same in his brief. The
judgment was affirmed.

The instructions relating to reasonable doubt, the
credibility of witnesses, and the testimony of the defend-
ant himself, as given on the trial, appear to be in har-
mony with the views expressed in *Minich v. People,* 8
Colo. 440.

The remaining assignments of error requiring notice
relate to instructions given, numbered 15, 19 and 21, re-

spectively. It was error to charge the jury, as in instruction No. 15, to the effect that, to justify homicide on the plea of self-defense, it must appear that the slayer had no other possible, or at least probable, means of escaping, etc. Such instruction is not in harmony with the law of self-defense, as declared in sections 31, 32 and 33 of the Criminal Code.

It is difficult to determine what is meant by the first part of instruction No. 19. Something appears to have been omitted from it, unintentionally perhaps. The language is uncertain and misleading, so far as it assumes to state what is requisite or sufficient to constitute murder of the first degree, and so the instruction must be held erroneous.

Instruction No. 21 is fatally erroneous. By it the jury were told that they should find the defendant guilty of murder of the second degree, even if they should believe that the killing was done without any malice, deliberation or premeditation whatever. It is scarcely necessary to state that malice aforethought, either express or implied, must appear from the evidence in order to warrant a conviction for murder of any degree. It cannot be maintained that, since the defendant was not convicted of murder of the second degree, this instruction did him no harm, or that it was error without prejudice; for it may be that the giving of this instruction was the very cause which led to his conviction of murder of the first degree instead of the second. The jury were told, in effect, that if they believed from the evidence, beyond reasonable doubt, that the killing was done by defendant unlawfully, feloniously, premeditatedly and of his malice aforethought, they should convict of murder of the first degree; but that if they further believed that such killing was without any malice, deliberation or premeditation whatever, they should convict of murder of the second degree. Hence they would naturally understand that, if the evidence showed clearly that the killing was done

*with malice*, they must convict of a grade requiring malice to be proved, and not of a grade in which they were informed the proof of malice was unnecessary. *Mackey v. People*, 2 Colo. 14; *Clare v. People*, 9 Colo. 122.

The importance of the issue in this case has induced us to consider the assignments of error in greater detail than usual, with the view to giving the people as well as the accused the benefit of this opinion in case of a new trial. Hence we have expressed our views freely upon many assignments in which no error has been found, as well as upon the few in which substantial error appears. The judgment of the district court is reversed and the cause remanded.

*Reversed.*

CHIEF JUSTICE HELM. I concur in the reversal of the judgment upon the grounds stated in the opinion. Upon the other questions discussed I express no conclusions.