No. 23207.

WILLIE HOWARD SWIFT *v.* THE PEOPLE OF THE STATE OF
COLORADO.
(465 P.2d 391)

Decided February 24, 1970.

Hecox & Tolley, Lawrence A. Hecox, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, James F. Pamp, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice McWilliams.

One Willie Howard Swift, hereinafter referred to as the defendant, was convicted by a jury of the crime of assault with the intent to murder (C.R.S. 1963, 40-2-34) and immediately thereafter the same jury in a separate proceeding determined that he had also suffered three prior felony convictions. Based on these verdicts the defendant was then sentenced under the Habitual Criminal Act (C.R.S. 1963, 39-13-1) to a life term in the state penitentiary. By this writ of error the defendant on a wide variety of grounds seeks reversal of the judgment and sentence thus entered.

Brief reference to the evidence adduced by the People upon trial is deemed helpful to an understanding of the controversy. It should be noted the defendant at trial elected to exercise one of his many constitutional rights and did not testify nor was any evidence offered in his behalf. This he is of course entitled to do under the constitutions of both the United States and Colorado. However, in so doing the defendant is in no position to

thereafter complain if the jury draws inferences from the People's evidence which are unfavorable to him. *Schamber v. People*, 159 Colo. 102, 410 P.2d 514.

At about 3 o'clock on a September morn several Colorado Springs police officers were sent to investigate the report of a suspicious party in an inimproved area of open land at and near 25th Street and its intersection with Fountain Creek in El Paso County. Officers Caldwell and Stratton were the principal witnesses against the defendant. They testified that after surveying the scene at and near the intersection of 25th Street and Fountain Creek for several minutes they espied the silhouette of a person who then "jumped up and started to run." The officers said that they shouted "hold it" to the fleeing figure and that the only response to their admonition was a series of shots directed at the aforesaid police officers. Both police officers testified that they saw "flames" from the weapon fired at them; that the flames had a horizontal trajectory; and that the person firing at them was some thirty to thirty-five feet away from them. One officer stated that the "white flash looked like it was aimed right for me — like a big arm reaching out and trying to get hold of me. . . ." The officers returned fire and Officer Stratton felled the fleeing person with one shot.

Moments later these same officers came upon the person of the defendant lying on the ground in an unconscious condition with a gun containing five empty cartridges located within two to three feet from him. A subsequent search of the area revealed a very recently stolen safe, a sledgehammer and crowbar lying adjacent thereto with a chisel stuck in the door of the safe and the handle lying on the ground. This was substantially all of the evidence produced by the district attorney in connection with the substantive charge of assault to murder. Evidence relating to the habitual criminal charge will be reserved for later comment.

The defendant contends that the evidence is

legally insufficient to support a conviction for the crime of assault with intent to murder in that there was no evidence that this defendant had a specific intent to murder either Caldwell or Stafford. Relating to this matter of specific intent, it is also contended that the trial court erred in refusing to give the jury the particular form of instruction on specific intent tendered by the defendant. This entire line of argument we regard to be without merit. In our view the evidence does show, *prima facie,* and intent on the part of the defendant to murder both Caldwell and Stratton. Moreover, instruction No. 12 concerning specific intent which was given the jury does meet the requirements of *Armijo v. People,* 157 Colo. 217, 402 P.2d 79. The reasoning of counsel that the failure of the district attorney to produce a spent bullet suggests that the defendant was perhaps firing blanks or at the best only firing warning shots in the air is rejected as too finely spun and not supported by the record.

Error is also predicated on the ruling by the trial court that the testimony regarding the finding of the safe constituted admissible evidence. We perceive no error in this regard. Evidence which tends to establish motive or intent is not rendered inadmissible merely because it may tend to show commission by the accused of a crime different from the one with which he is charged. *Bell v. People,* 158 Colo. 146, 406 P.2d 681. Certainly it could be reasonably inferred from this evidence that the defendant was not simply firing shots into the air but was firing at the officers in an effort to avoid detection and arrest for the theft of the safe.

Counsel also argues that the trial court abused its discretion in overruling defendant's request that the jury be sequestered during the trial and in refusing to permit the jury to make a personal inspection of the scene of the crime. Suffice it to say that we find no abuse of discretion on the part of the trial court in denying these two requests. In connection therewith see *Feldstein v.*

*People,* 159 Colo. 107, 410 P.2d 188 and *Day v. People,* 152 Colo. 152, 381 P.2d 10. And the contention that the closing argument of the district attorney was improper and requires reversal is also without substance. Indeed the particular argument of the district attorney to which the defendant takes umbrage seems to us to be surprisingly mild.

■ Complaint is also made by the defendant concerning the habitual criminal proceedings. In this connection the district attorney offered authenticated copies (as opposed to certified copies) of the record of two former convictions in New Mexico and one in Colorado. *Coppinger v. People,* 152 Colo. 9, 380 P.2d 19. Additionally, the custodian of records at both the New Mexico state penitentiary and the Colorado state penitentiary testified and each identified the defendant as having been received in connection with the aforementioned convictions at the aforesaid institutions on the dates in question. Further, pursuant to C.R.S. 1963, 52-1-1 the district attorney "read" into the record certain statutes from the printed statute books of New Mexico. The district attorney also "introduced" into evidence certain Colorado statutes. Reference to the statutes of both New Mexico and Colorado was for the purpose of showing that defendant's prior convictions were *felony* convictions, as opposed to misdemeanors.

It was on such evidence that the jury returned verdicts that the defendant had suffered three prior felony convictions. Certainly the evidence is amply sufficient to sustain these several determinations. Further, any possible impropriety as concerns the manner in which the district attorney presented his evidence on this phase of the case is under the circumstances quite trivial and of no real significance.

■■ Error is also predicated upon the giving of instruction No. 3 in the habitual criminal proceeding. That particular instruction advised the jury that Colorado statutes provide that a person convicted in this state of

a felony who shall have been "previously twice or more times" convicted of a felony shall be adjudged an habitual criminal and punished as such. Counsel argues that the phrase "twice or more" reduces the case from one falling under subsection 2 of C.R.S. 1963, 39-13-1 to subsection 1, and would in this case mean that a life sentence should not have been imposed and that the most severe sentence that the trial court could have imposed would have been three times the maximum sentence permitted for assault to murder. We do not agree. The instruction is correct in that one who suffers a felony conviction and has been previously convicted "twice or more" is an habitual criminal. And this is true regardless of whether he has suffered two, three, four or five prior felony convictions. The fact that the law permits the judge to impose a more severe penalty on one who has suffered three or more convictions, as opposed to one who has suffered only two, is of no moment. The jury's only function is to determine how many, if any, prior felony convictions have been suffered by the defendant. Once this determination is made the act of sentencing is a matter reserved for the trial judge acting under applicable statute.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.