### No. 26220

**The People of the State of Colorado v. John Alfred Charles Lazare**

(542 P.2d 1290)

Decided December 1, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, James W. Wilson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, T. Michael Dutton, Deputy for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

On August 13, 1973, the defendant, John Lazare, was tried for first-degree murder. At the close of all evidence the jury returned a verdict of guilty with a recommendation of leniency. Prior to trial, on July 6, 1973, the defendant filed a Motion for Discovery of possible felony convictions of prosecution witnesses which was denied by the trial court. Defendant has appealed to this court and assigns three trial court rulings as error. We affirm.

## I.

The defendant asserts that the trial court improperly denied the motion for discovery of felony convictions of witnesses. Specifically, the defendant claims that the credibility of Judith Brannon, the wife of the deceased victim, who at various times had been living with the defendant, was a crucial matter in the trial and that because Mrs. Brannon had been *arrested* for narcotics possession the defendant was harmed by a denial of the discovery motion. At the outset we note that the defendant has made no claim or even a suggestion that felony conviction records actually were withheld. Furthermore, the record discloses that neither Mrs. Brannon nor

any other witnesses were asked by the defense on cross-examination whether they had been convicted of a felony.

Under such circumstance and in the absence of showing prejudice to the defendant by the refusal to grant the motion, no abuse of discretion requiring reversal exists. *People v. Maestas,* 183 Colo. 378, 517 P.2d 461 (1973).

But defendant contends that due process gives him an absolute right to such information and requires a reversal regardless of lack of prejudice. In support of this position, he cites *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). None of these cases is apposite to that contention. In each of them, the withheld evidence was shown to be such as might be helpful to the defense.

## II.

The defendant next contends that the trial court erroneously admitted as evidence a telephone conversation between the defendant and Officer Gary L. Freeman which took place shortly after the homicide. The record colloquy was as follows:

"Police Officer: Commerce City Police, Sergeant Freeman.
Caller: Yes, sir. Can you send a patrol car to 7880 Quebec?
Police Officer: What's the problem?
Caller: There's been a murder.
Police Officer: 7880 Quebec?
Caller: Uh-huh.
Police Officer: Is the people involved there right now?
Caller: Yes, I'm here.
Police Officer: You sure the person has been killed?
Caller: Uh-huh. You can send an ambulance too, please.
Police Officer: 7880 Quebec?
Caller: Uh-huh.
Police Officer: All right, sir, we'll have someone come up right —
Caller: O.K. Thank you.''

Defendant argues that use of the word "murder" constitutes a legal opinion, and therefore, under the opinion rule the word should have been excluded from evidence at trial.

There has been no contention made that the defendant's statement was involuntary or given in violation of his *Miranda* rights. Thus, for purposes of constitutional law the statement was clearly admissible. Furthermore, there has been no argument made that the statement was not admissible under exceptions to the hearsay rule. Thus, the single question presented is whether the word "murder" should have been excised because it constituted a legal opinion. We hold that it was not error to admit the recorded conversation in unedited form.

We do not view the problem here as analogous to the giving of opinion evidence by lay witnesses at a trial, although that is the context in which defendant asks us to view it. Obviously, if the statement had been made in open court by a witness, upon proper objections, the court could have ordered a rephrasing. But to apply the rather esoteric rule relating to admissibility of opinion evidence in the courtroom to a statement made by a layman out of court under circumstances where, as here, no legal opinion is really intended by the relator, is patently absurd. The matter is succinctly stated by Professor McCormick as follows:

"* * * this (opinion rule), designed to promote the concreteness of answers on the stand, is grotesquely misapplied to out-of-court statements, such as admissions, where the declarant's statements are made without thought of the form of the courtroom testimony and where it can only be applied by excluding the statement, whereas in the courtroom if the opinion objection is sustained, counsel may reframe his question in the preferred form." *C. McCormick, Evidence* § 264 (2d ed. 1972).

*See also, 4 J. Wigmore, Evidence* 1053(3) (Chadbourn rev. 1972).

Thus, we believe it was not error to admit the recording which included the word "murder," particularly where, as here, the jury was properly and adequately instructed regarding the legal definition of murder, its various elements and degrees. We do not mean — and should not be so interpreted — to say that all out of court opinions, admissible under a hearsay exception, are therefore always admissible. But, we do say, that in a case such as the instant one, the out of court statement which was obviously not intended as an opinion of the legal consequences of the defendant's conduct, is not inadmissible. Use of the opinion rule in such a context would indeed be grotesquely inappropriate.

## III.

Finally, the defendant contends that the trial court erred in admitting into evidence testimony of prior threats the defendant had made toward the victim. Defendant argues that since the threats were made from six to nine months before the homicide, they were too remote in time to be properly admitted.

At the outset we note that "[i]t is competent for the state, on a trial for murder, to show threats made by the defendant against the deceased as tending to prove malice charged in the indictment." *Babcock v. People,* 13 Colo. 515, 22 P. 817 (1889). Furthermore, we have stated that the remoteness of threats made does not destroy their admissibility and competency as evidence but rather only tends to weaken its weight and effect in the jury's consideration. *Berger v. People,* 122 Colo. 367, 224 P.2d 228 (1950); *Babcock, supra.*

In *Babcock v. People,* 13 Colo. 515, 22 P. 817 (1889), the defendant was convicted of first-degree murder. A witness for the defense testified

that the defendant and victim had an altercation nearly one year before the homicide and that immediately afterwards the deceased had threatened the defendant. We held it was error to strike this testimony. And in *Berger v. People,* 122 Colo. 367, 224 P.2d 228 (1950), evidence of threats and acts of violence made by the defendant toward the deceased as long as five years prior to the homicide were held by this court to be admissible, over an objection of remoteness. *See also, Rice v. People,* 55 Colo. 506, 136 P. 74 (1913) (testimonial evidence that 17 months before alleged assault and battery the defendant had tried to hire the witness to commit an assault on the victim, held admissible).

It was not error in this case to admit testimony of threats made by the defendant six to nine months prior to the homicide. The trial court made a threshhold determination that the evidence was relevant, and the exact weight to be given such evidence is a matter for the jury.

The judgment is affirmed.