## No. 27527

**The People of the State of Colorado v. Samuel L. Gladney**

(570 P.2d 231)

Decided September 19, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Deborah L. Bianco, Assistant, for plaintiff-appellee.

R. Douglas Buckles, Robert M. Petrusak, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

Patricia Campbell was mortally wounded during an exchange of gunfire with a man identified at trial as the defendant. After an eight-day jury trial on a charge of first-degree murder, the defendant was convicted of second-degree murder. This appeal challenges several of the trial court's rulings. We affirm.

## I.

Over the defendant's objections that the statements were hearsay, two prosecution witnesses testified that Patricia Campbell had told them that the defendant had threatened to kill her. One of the witnesses stated that the threats related to Campbell's loss of certain drugs belonging to the defendant. The defendant contends that admitting this testimony constituted reversible error: (1) because the testimony described events too remote in time from the charged offense to have any probative value; (2) because the testimony contained evidence of collateral misconduct regarding narcotics; and (3) because the testimony was admitted without a cautionary instruction limiting its use.

We note at the outset that evidence of prior threats or an antecedent grudge borne by the defendant against the victim is competent in a murder prosecution to show motive, malice, or ill will between the victim and the defendant. *People v. Lazare*, 189 Colo. 530, 542 P.2d 1290 (1975); *People v. Miller*, 187 Colo. 239, 529 P.2d 648 (1974). Generally, remoteness of the threats in time relates only to the weight to be given the evidence, not to its admissibility. *People v. Lazare, supra*; *People v. Miller, supra*; *Berger v. People*, 122 Colo. 367, 224 P.2d 228 (1950).

The defendant further contends that the evidence of threats was inadmissible because it was hearsay. If offered solely to show the victim's state of mind, however, and not to show the fact that the defendant threatened the victim, the evidence was not within the definition of hearsay. *See, e.g., People v. Atchley*, 53 Cal.2d 160, 346 P.2d 764, 770 (1959); 6 *J. Wigmore, Evidence*, § § 1714, 1790 (Chadbourn rev. 1976). The testimony tended to show the decedent's fear of the defendant and was relevant to explain her subsequent actions, including carrying a gun. Since the defendant attempted to prove that the decedent may have been the aggressor, her fear of the defendant was clearly relevant. Thus, correctly analyzed, this evidence was not offered to prove the truth of the facts asserted in the out-of-court declarant's statements, and therefore it was not hearsay. *McCormick, Evidence*, § § 246, 249 (Cleary Ed. 1972). *Cf. Bustamonte v. People*, 157 Colo. 146, 154-55, 401 P.2d 597, 601 (1965).

Nor is such evidence necessarily inadmissible simply because it tends to show collateral misconduct. *People v. Borrego*, 187 Colo. 217, 529 P.2d 639 (1974); *Swift v. People*, 171 Colo. 178, 465 P.2d 391 (1970); *Wilkinson v. People*, 170 Colo. 336, 460 P.2d 774 (1969).

The defendant contends, however, that even assuming the evidence was admissible the trial court committed reversible error by failing to give a cautionary instruction to limit the purpose for which the jury could consider the testimony. *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959) is cited by the defendant for this contention. But such

instructions are mandated only when requested by defense counsel and where misconduct is of a "similar nature" to the offense charged, and is "wholly independent" of the transaction on trial. *Stull v. People, supra* (instruction requested and refused). The disputed testimony in this case, however, related directly to the chain of events leading to the crime charged. *People v. Geller,* 189 Colo. 338, 540 P.2d 334 (1975).

■ Here, although it would have been better practice to instruct the jury regarding the limited purpose of the evidence at the time it was admitted, it was not reversible error not to give the contemporaneous limiting instruction, since defense counsel failed to ask for such an instruction. A trial judge cannot be expected to anticipate every evidentiary issue counsel may raise nor to have advance knowledge of testimony that may be elicited from particular witnesses. Counsel have an opportunity to interview witnesses in advance of trial and prepare for trial knowing the substance of each witness' testimony. Thus a defense attorney has an opportunity to consider and determine in advance, or no later than the time the prosecution offers the evidence, whether it is in the defendant's best interest to request a contemporaneous cautionary instruction. Defense counsel, for strategic or tactical reasons, may consider that such an instruction would be more harmful than beneficial. For example, it might tend to draw special attention to the evidence, thus giving it greater emphasis and jury impact than it would have had if left alone. A trial judge, of course, has discretion to give or not to give such a cautionary instruction when it is not requested. Failure to give such an instruction when not requested, is not reversible error. *People v. Mullins,* 188 Colo. 23, 532 P.2d 744 (1975); *People v. Scheidt,* 182 Colo. 374, 513 P.2d 446 (1973).

## II.

The defendant, wounded during the exchange of gunfire, sought treatment at Colorado General Hospital. Pursuant to standard procedure, hospital authorities informed the Denver Police Department that a gunshot victim was seeking medical aid, and a police officer was dispatched to take an assault report. The defendant made several statements to the officer that were inconsistent with his later testimony at trial. He now challenges the trial court's admission of the statements he made to the officer, asserting that his constitutional rights were violated because he was not given *Miranda*[1] warnings prior to the questioning.

■ The record clearly indicates that at the time he interviewed the defendant, the police officer was not aware that anyone else had been injured; in fact, the defendant was designated as the victim in the officer's assault report. When the officer subsequently contacted the police station and learned that the defendant was a homicide suspect, the defendant was

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

advised of his constitutional rights. Given these facts, it is clear that the defendant's statements were made during the investigatory stage, not the accusatory stage of the criminal proceeding, at a time when no suspicion had yet focused upon him. Therefore, *Miranda* warnings were not required. *People v. Downer*, 192 Colo. 264, 557 P.2d 835 (1976); *People v. Thornton*, 190 Colo. 397, 547 P.2d 1278 (1976).

## III.

During cross-examination of a prosecution witness, defense counsel attempted to impeach the witness' credibility by showing that he had once been committed to the state mental hospital. The trial court sustained the district attorney's objection, and the defendant now asserts that reversible error was committed. We disagree.

This court has previously held that evidence of mental incapacity is admissible for impeachment purposes, at least where an adequate foundation has been laid to indicate that the form of mental incapacity sought to be proved is indeed relevant to the witness' credibility. *People v. Schuemann*, 190 Colo. 474, 548 P.2d 911 (1976). Here, however, it was shown only that the witness sought to be impeached had been confined in the Colorado State Hospital for a five-month period more than three years prior to the trial. The defendant made no offer of proof to demonstrate that the hospitalization was in any way relevant to the defendant's credibility three years later at the time of trial. There was no indication whether the witness had been confined for treatment or merely for observation and examination. Given no foundation, the mere *fact of hospitalization* occurring several years before trial is too remote to be presumed to affect the witness' credibility. *People v. Norwood*, 37 Colo. App. 157, 547 P.2d 273 (1975). *See also Johnson v. People*, 171 Colo. 505, 468 P.2d 745 (1970). Under these circumstances the trial court's limitation of cross-examination was not reversible error since neither abuse of discretion nor manifest prejudice has been shown. *People v. Cushon*, 189 Colo. 230, 539 P.2d 1246 (1975); *McCune v. People*, 179 Colo. 262, 499 P.2d 1184 (1972).

## IV.

The district attorney had prepared a number of photographs to be used as exhibits during the defendant's trial. The trial court, however, refused to admit several of them because their inflammatory nature outweighed their probative value.

Later in the trial, defense counsel moved for a mistrial, claiming that several of the photographs previously ruled inadmissible had been left on the district attorney's table where the jury could have seen them. The district attorney acknowledged that the photographs were within the jury's view, but asserted that the photographs were stacked so that only the top one was visible. The top photograph, an aerial view of various streets and buildings, was obviously non-inflammatory. Nonetheless, the district

attorney conceded that the defendant's motion for a mistrial was "probably proper at this time." The defendant assigns as reversible error the trial court's refusal to grant the requested mistrial.

A mistrial is a most drastic remedy for prejudicial conduct. For that reason, denial of a mistrial will not be disturbed on review unless it is apparent that the trial court has abused its discretion. *People v. Lowe,* 184 Colo. 182, 519 P.2d 344 (1974); *People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973). There is no such indication here. After the mistrial motion, the trial judge declared that he was "convinced *without any doubt at all*" that the only photograph possibly visible to the jury was the innocuous one on top of the pile.

An appellate court must give deference to findings of the trial court that are based on its observation of courtroom occurrences. There is no indication in the record that the trial court's ruling was incorrect, and it would require abstract speculation on our part to find that the defendant was prejudiced. The mere *possibility* of prejudice is not sufficient to warrant reversal. *People v. Thomas,* 181 Colo. 317, 509 P.2d 592 (1974).

## V.

The defendant was charged with first-degree murder, and convicted of second-degree murder. He launches a three-pronged attack on that conviction.

First, the defendant argues that the trial court erred in instructing the jury that second-degree murder is a lesser included offense of first-degree murder. A person commits first degree murder if, *inter alia,* "With premeditated intent to cause the death of a person other than himself, he causes the death of that person. . . ." Section 18-3-102(1)(a), C.R.S. 1973. A person commits second-degree murder if he causes a death intentionally, without premeditation, or with intent to cause serious bodily injury. Section 18-3-103(1)(a) and (b), C.R.S. 1973. A reading of the statutes makes apparent the difference in substance between the two crimes: first degree murder requires the *additional* element of *premeditation.* Since proof of first-degree murder necessarily establishes every element of second-degree murder, the latter is necessarily a lesser included offense of the former. *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977). *See also People v. Lankford,* 185 Colo. 445, 524 P.2d 1382 (1974), which was decided under the previous murder statutes. Therefore, the trial court did not err in instructing the jury to that effect.[2]

Secondly, the defendant contends that the trial court erroneously failed to instruct the jury that malice is an essential element of

---

[2]We note that the first and second-degree murder statutes have been amended, so that "deliberation" rather than "premeditation" is the distinguishing element. Sections 18-3-102 and 18-3-103, C.R.S. 1973 (1976 Supp.). This change obviously does not affect our reasoning here.

second-degree murder. This argument also must fail, since the express statutory definition of the crime, *supra*, does not include malice as an element. The instruction given in this case was a verbatim recitation of the second-degree murder instruction approved by this court in *People v. Davis*, 187 Colo. 117, 530 P.2d 499 (1974), which was decided after enactment of the second-degree murder statute applicable here.

Thirdly, the defendant contends that the second-degree murder statute, section 18-3-103, C.R.S. 1973, is unconstitutionally overbroad. The defendant argues that second degree murder as defined in the statute is "conceptually indistinguishable" from intentional manslaughter, and thus includes acts which could also be determined to be manslaughter. Therefore, he argues, persons whose acts are indistinguishable could be found guilty of either crime. This is an inaccurate characterization of the statutory scheme.

The manslaughter statute, section 18-3-104(1)(c), C.R.S. 1973, applies to circumstances where homicide is provoked by a "serious and highly provoking act," sufficient to "excite an irresistible passion in a reasonable person." *English v. People*, 178 Colo. 325, 497 P.2d 691 (1972); *Sanchez v. People*, 172 Colo. 168, 470 P.2d 857 (1970). Therefore, under the statutory scheme as it is applied by the courts, the two crimes are indeed distinguishable.

## VI.

Finally, the defendant contends that there was insufficient evidence to support a conviction of second-degree murder. The standard by which we must judge the sufficiency of evidence to support a jury verdict is whether the evidence, viewed in its totality and in the light most supportive of the verdict, is sufficient to uphold a conclusion in the minds of reasonable persons that the defendant was guilty beyond a reasonable doubt. *People v. Bueno*, 188 Colo. 396, 534 P.2d 1196 (1975). Since there was adequate evidence indicating guilt, and the jury was free to disbelieve the defendant's version of the incident, there is no question that the standard was met in this case.

We thus conclude that the trial court committed no prejudicial error. The judgment is affirmed.