The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Michael BORRELLI, Defendant-Appellant.

No. 77–713.

Colorado Court of Appeals, Div. II.

Oct. 23, 1980.

Rehearing Denied Nov. 20, 1980.

Certiorari Denied March 9, 1981.

J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sp. Asst. Atty. Gen., J. Stephen Phillips, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

Holm & Dill, H. Alan Dill, Kim H. Peterson, Jon Stonebraker, Denver, David A. Sorenson, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant appeals his conviction of first degree murder, conspiracy to commit first degree murder, and first degree assault. Defendant has raised numerous contentions of error on appeal, one of which we conclude requires reversal and remand to the trial court for a new trial.

## I.

During the voir dire, one of the jurors stated that she was acquainted with a certain psychiatrist. The following exchange then took place between the trial court and the juror:

"THE COURT: How do you happen to know Dr. _____?

"JUROR: My mother had a nervous breakdown, and he was her psychiatrist, and he took care of her for ten years. And I did some work in his office a ways back. I did a billing, not his, but one of his partners', for awhile. We're just friends. He knows my sister real well. When she got on me last night, I just called him and asked him what I should do.

"THE COURT: Just as an advisor? He hasn't been your doctor?

"JUROR: No. He's just my friend, my mother's."

Approximately one year after the trial and conviction of defendant, this juror died of acute secobarbital intoxication, leaving a note indicating that she had committed suicide. It was subsequently determined that the juror had not been truthful in her responses during voir dire and that from 1970 until her death in 1978 she had in fact been treated for a serious personality disorder by this psychiatrist. Also, prior to the trial at issue, the juror had attempted suicide at least six times, and on two occasions was under the care of the Fort Logan Mental Health Center and the Northwest Community Mental Health Center. Additionally, during the eight-year period the juror was under the care of this psychiatrist, she was regularly issued prescriptions for psycho-active drugs.

On appeal, defendant contends that the trial court erred in denying his motion for new trial based on the newly discovered evidence that the juror gave false answers and concealed material facts on voir dire, and that the juror was incompetent because of her personality disorder and ingestion of mind-altering drugs during the period of her jury duty. The People contend that the juror incompletely assessed the nature of her relationship with the psychiatrist, that this incomplete assessment was immaterial to her qualifications as a juror, that the evidence does not show that the juror was incompetent during the period of her jury duty, and that defendant has failed to show that he suffered any prejudice as a result of

the juror's incomplete disclosure during voir dire.

■ The failure of a juror during void dire to answer material questions truthfully, if discovered during a trial, may justify the removal of that juror and replacement with an alternate or may justify declaring a mistrial. *People v. Bastardo,* 191 Colo. 521, 554 P.2d 297 (1976); *State v. Tresvant,* 359 So.2d 524 (Fla.Dist.Ct.App.1978); *Minnis v. Jackson,* 330 So.2d 847 (Fla.Dist.Ct.App. 1976); *see also People v. Farris,* 66 Cal. App.3d 376, 136 Cal.Rptr. 45 (1977). If the lack of candor on the part of the juror is not discovered until after the trial, it may justify the granting of a new trial. *People v. Rael,* 40 Colo.App. 374, 578 P.2d 1067 (1978); *State v. Simmons,* 59 Wash.2d 381, 368 P.2d 378 (1962); *see also Baker v. Keller,* 15 Ohio Misc. 215, 44 Ohio Op.2d 432, 237 N.E.2d 629 (1968). A defendant has the right to exercise all of his peremptory challenges, and when a juror misrepresents or conceals material and relevant matters, that right, as well as the right to challenge for cause, is impaired. *People v. Rael, supra; State v. Simmons, supra.* Under the circumstances present here, the lack of candor on the part of the juror during voir dire denied defendant his right to make an intelligent decision as to whether to challenge the juror for cause, exercise a peremptory challenge, or accept the juror. As a result, the convictions must be set aside and a new trial granted.

### II.

Among defendant's contentions of error which may again occur on retrial is his assertion that the trial court erred by denying his motion to suppress evidence seized during a search of his residence. This contention is without merit.

■ Although the search in question occurred after defendant's arrest and after he had retained counsel, the search was properly conducted with the voluntary consent of defendant's wife. *See People v. Wieckert,* 191 Colo. 511, 554 P.2d 688 (1976). Under these circumstances, we find no violation, either ethical or constitutional, with respect to the failure of the police or the prosecutor's office to notify defendant's attorney that the search was being conducted.

### III.

Defendant also contends that the trial court erred in admitting hearsay statements to the effect that the victim was afraid of defendant. We agree.

The trial court admitted the statements purportedly made by the victim under the state-of-mind exception to the hearsay rule. Colorado Rules of Evidence 803(3).

■ Some courts have held that hearsay declarations by a homicide victim are admissible since they are presumptively probative of some matter in the case. *State v. Shirley,* 7 Or.App. 166, 488 P.2d 1401 (1971). However, the more recent and better-reasoned cases allow hearsay expressions of a victim's fear of a defendant only where the state of mind of the victim is clearly relevant to a material issue in the case. *United States v. Brown,* 490 F.2d 758 (D.C.Cir. 1973); *State v. Wauneka,* 560 P.2d 1377 (Utah 1977). The concern is that the jury will not use the evidence to consider the victim's state of mind, but rather, as probative of the defendant's guilty state of mind. *United States v. Brown, supra.* These cases apply a balancing test and weigh the probative value of the evidence against the potential for prejudice to the defendant. This view is consistent with Colorado law. *See People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978).

■ Where, as here, the state of mind of the victim is not a material issue in the case, the prejudicial effect of extra-judicial declarations of fear of defendant by the victim outweighs any probative value of this evidence. As a result, the state of mind exception to the hearsay rule is not applicable to this case to the statements purportedly made by the victim, and the trial court erred in allowing those statements into evidence.

Contrary to the People's contention, we find no support in *People v. Lazare*, 189 Colo. 530, 542 P.2d 1290 (1975), or the cases cited therein for the admission of these statements. Those cases dealt with the question of whether non-hearsay testimony regarding threats and acts of violence between a victim and a defendant is relevant despite the remoteness of the incidents. In contrast, the evidence in this case is not relevant to a material issue and, therefore, is inadmissible.

### IV.

Defendant's last contention of error which we feel it necessary to address concerns the trial court's exclusion of certain evidence regarding the prosecution's chief witness. Defendant contends that his right to confront and impeach the witness was abrogated by certain limitations imposed during the cross-examination of the witness, and by the exclusion of evidence regarding the witness' psychiatric condition and his reputation for truth and veracity during the period from two to three years prior to the homicide at issue.

Defendant sought to present the testimony of two doctors, on of whom, Dr. MacKinnon, would state that approximately three years before the killing he examined the witness and found him to be suffering from permanent "organic brain syndrome" which could affect his intellectual functioning and memory. We agree with defendant that it was error to exclude this testimony.

■ As stated in *People v. Schuemann*, 190 Colo. 474, 548 P.2d 911 (1976), the "[m]ental incapacity of a witness is clearly admissible for the purpose of impeachment, since it bears directly upon the question of credibility." Here, the proffered evidence regarding the witness' mental incapacity related to his intellectual functioning and memory and, therefore, was relevant to the question of credibility and should have been admitted.

■ The testimony of the second doctor, Dr. Casper, was properly excluded because his examination of the witness approximately three years prior to the killing, unlike that of Dr. MacKinnon, did not result in a finding of organic disfunction and because he was unable to give an opinion as to the state of the witness' mental health either during the time of the killing or at the time of the trial. As a result, Dr. Casper's testimony was not relevant to the question of the witness's credibility at the time of trial. *People v. Gladney, supra; People v. Keelin*, 39 Colo.App. 124, 565 P.2d 957 (1977); *see also People v. Norwood*, 37 Colo. App. 157, 547 P.2d 273 (1975).

■ Additionally, the trial court determined that the proffered testimony of Dr. Casper, as well as certain evidence relating to the witness' reputation for truth and veracity some two years prior to the killing, was too remote and therefore not admissible. Absent clear proof of an abuse of discretion, a trial court's determination that evidence is too remote to be relevant will not be disturbed on review. *People v. Murdock*, 38 Colo.App. 223, 555 P.2d 849 (1976). Here, we find no such abuse of discretion.

■ Nor do we find any abuse by the trial court in the limits it placed on the cross-examination of the prosecution's witness, a matter which lies within its second discretion. *People v. Moreno*, 192 Colo. 314, 558 P.2d 440 (1976).

■ The other bases for reversal asserted by the appellant, even if they be error, are not likely to reoccur upon retrial and will not be addressed.

Judgment reversed and cause remanded for new trial.

SMITH and STERNBERG, JJ., concur.