23CA0697 Peo v Arrington 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0697
Boulder County District Court No. 21CR441
Honorable Nancy W. Salomone, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee and Cross-Appellant,

v.

Kasey James Arrington,

Defendant-Appellant and Cross-Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado; Michael T. Dougherty, District Attorney, Ryan P. Day, Senior Deputy District Attorney, Boulder, Colorado, for Plaintiff-Appellee and Cross-Appellant

Christopher Gehring, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

¶ 1 Defendant, Kasey James Arrington (Arrington), appeals his judgment of conviction on a jury verdict finding him guilty of second degree kidnapping, unlawful sexual contact, and criminal attempt to commit sexual assault. The jury also made special findings that (1) Arrington caused submission through force or violence during the unlawful sexual contact, elevating that charge from a misdemeanor to a felony; and (2) L.M., the person kidnapped, was also the victim of another specified crime.

¶ 2 Arrington contends that (1) the district court erred by denying his motion for a new trial based on juror misconduct; and (2) the unlawful sexual contact (force) conviction violates his due process and equal protection rights. On cross-appeal, the Attorney General contends that the district court was required to impose consecutive sentences and thus erred by sentencing Arrington concurrently.

¶ 3 We conclude that the district court did not err in denying Arrington's motion for a new trial and that his unlawful sexual contact (force) conviction does not violate his due process and equal protection rights. But we partially agree with the Attorney General's cross-appeal that the district court erred by sentencing Arrington concurrently, and not consecutively, with respect to the

kidnapping and sexual assault offenses. Therefore, we affirm in part, reverse in part, and remand the case to the district court for resentencing.

## I. Background

¶ 4 The prosecutor presented the following facts upon which the jury found Arrington guilty.

¶ 5 L.M. was attacked by Arrington while she worked alone at a drive-through coffee kiosk. She testified that the assailant attacked her from behind, putting his hands on her crotch, pulling down her leggings and underwear, and touching her vaginal area. The attacker moved her into the bathroom area, she continued to resist and scream, and eventually he fled. The identity of L.M.'s attacker was disputed and a critical issue at trial, but L.M.'s testimony and DNA evidence on a number of objects at the kiosk, including on L.M.'s facemask and ear, tied Arrington to the attack.

¶ 6 Arrington was charged with and ultimately convicted of three counts: (1) second degree kidnapping, elevated to a class 2 felony because the jury found L.M. was the victim of a sexual offense during the kidnapping; (2) unlawful sexual contact, elevated to a class 4 felony as the jury found Arrington caused L.M.'s submission

2

through force or violence; and (3) criminal attempt to commit sexual assault, a class 5 felony. The district court sentenced him to twelve years in the custody of the Department of Corrections (DOC) for the kidnapping conviction, eight years to life in DOC for the unlawful sexual contact conviction, and three years in DOC for the attempted sexual assault conviction — with the sentences on the three counts to run concurrently.

## II. Motion for a New Trial

¶ 7 Arrington contends the district court erred by denying his motion for a new trial based on a juror's intentional concealment of his criminal conviction during voir dire. We disagree.

### A. Additional Facts

¶ 8 Following entry of the jury's verdict, Arrington filed a motion for a new trial alleging that Juror B.C. "willfully refused to disclose material information during jury selection."[1] Relevant here, B.C.

---

[1] In the motion for a new trial, Arrington also alleged two other jurors had failed to disclose past criminal charges. Although he discusses the facts relating to one of those two other jurors on appeal, he makes no argument that the district court abused its discretion by denying his motion involving these other jurors. As a result, we consider any claims on the two other jurors abandoned. *See People v. Smith*, 2017 COA 12, ¶ 27 (we deem abandoned claims raised below but not pursued on appeal).

failed to disclose his criminal conviction for a municipal theft case occurring twelve years prior despite being asked during voir dire whether he had been involved in a criminal case. After a hearing on the motion and questioning of B.C., the district court found that he committed juror misconduct by intentionally concealing his past conviction. Even so, the court concluded that the conviction did not render B.C. incapable of rendering a fair and impartial verdict in Arrington's case and denied the motion.

### B.  Standard of Review and Applicable Law

¶ 9    We review a district court's ruling on a motion for a new trial alleging juror misconduct for an abuse of discretion. *See People v. Newman*, 2020 COA 108, ¶ 9; *People v. Garcia*, 752 P.2d 570, 584 (Colo. 1988). A court abuses its discretion when its decision "is manifestly arbitrary, unreasonable, or unfair," or when it "misconstrues or misapplies the law." *People v. Melara*, 2025 COA 48, ¶ 16. We review the district court's legal conclusions de novo and defer to its factual findings when supported by the evidence. *West v. People*, 2015 CO 5, ¶ 11.

¶ 10    A criminal defendant is constitutionally entitled to a fair trial by an impartial jury. U.S. Const. amends. VI, XIV; Colo. Const. art.

4

II, § 16.  The failure of a juror to answer material questions truthfully during voir dire is misconduct and may justify granting a new trial, but untruthful answers from jurors "do not per se entitle a party to a new trial."  *Black v. Waterman*, 83 P.3d 1130, 1136 (Colo. App. 2003).

### C.    Analysis

¶ 11    Arrington and the Attorney General agree that, if a juror's intentional nondisclosure during voir dire violated Arrington's right to a fair and impartial jury, he is entitled to a new trial.  But the parties diverge from there.

¶ 12    Arrington contends that when a court finds the juror misconduct is intentional — like it did here — a presumption of prejudice is applied, requiring reversal.  He points to *People v. Rael*, 578 P.2d 1067, 1068 (Colo. App. 1978), and *People v. Borrelli*, 624 P.2d 900, 903 (Colo. App. 1980) — cases decided by divisions of this court — to support his claim that a juror's intentional concealment of a material fact is per se prejudicial because it fundamentally

undermines the fairness and reliability of the trial.[2]  He also claims that the supreme court adopted a presumption of prejudice in *People v. Dunoyair*, 660 P.2d 890, 895 (Colo. 1983), because intentional nondisclosure is evidence of a juror's inability to render a fair and impartial verdict.

¶ 13     In response, the Attorney General argues the district court correctly determined that a juror's knowing concealment of relevant information is not per se prejudicial necessitating automatic reversal.  The Attorney General cites *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984), where the Supreme Court established a two-part test that a party must satisfy to obtain a new trial: A party must (1) "first demonstrate that a juror failed to answer honestly a material question on voir dire" and (2) "then

---

[2] These cases appear to no longer be good law with respect to their conclusions regarding the denial of a defendant's right to exercise his peremptory challenges.  *See People in Interest of D.F.A.E.*, 2020 COA 89M, ¶ 26 (concluding that all three cases have been implicitly overruled by *Vigil v. People*, 2019 CO 105, and *People v. Novotny*, 2014 CO 18).  Because Arrington does not present his challenge as one denying his right to exercise a peremptory challenge, we rely on the cases for an analytical framework to address his contention that a juror's intentional nondisclosure of information during voir dire results in presumptive prejudice to a defendant.

further show that a correct response would have provided a valid basis for a challenge for cause."

¶ 14    We decline the Attorney General's request to adopt *McDonough*'s two-part test. That case involved alleged juror misconduct in the context of a civil matter, so we leave for another day the question of whether its holding should be applied to state criminal proceedings. *See Mulberger v. People*, 2016 CO 10, ¶ 23 (Gabriel, J., concurring in the judgment) (recognizing the "cardinal principle of judicial restraint" that, "if it is not necessary to decide more, it is necessary not to decide more" (citation omitted)). More importantly, we need not decide whether *McDonough* should apply to criminal proceedings because there are sufficient state law cases that allow us to decide, and support our rejection of, Arrington's contention. We turn to the cases cited by the parties.

¶ 15    In *Dunoyair*, 660 P.2d at 895, an empaneled juror failed to disclose his acquaintance with one of the prosecutor's witnesses. The supreme court noted that a "juror's deliberate misrepresentation or knowing concealment is itself evidence that the juror was likely incapable of rendering a fair and impartial verdict in the matter." *Id.* The court concluded, however, that

because the juror's nondisclosure was "inadvertent, and the undisclosed information pertained to a prosecution witness whose testimony was of only peripheral significance to the charge," the misconduct was not presumptively prejudicial or sufficient by itself to warrant a new trial. *Id.* The court continued, "In the absence of a showing by the defendant that the juror's prior acquaintance with the witness was such as to create an actual bias either in favor of the prosecution or against the defendant," the court would assume "that the juror followed the instructions of the court and decided the case solely on the basis of the evidence and the law." *Id.* at 896; *see also People v. McNeely*, 68 P.3d 540, 543-44 (Colo. App. 2002) (affirming the denial of a new trial because the juror's nondisclosure that she remotely knew the defendant was inadvertent).

¶ 16    In *Borrelli*, 624 P.2d at 903, an empaneled juror failed to disclose that she was being actively treated for severe mental illness and was prescribed psychoactive drugs by a psychiatrist who was a witness in the case. When asked about her relationship with the psychiatrist during voir dire, though, the juror represented the doctor was a friend of her mother's. The division held that a new trial was mandated because "[u]nder the circumstances present . . .

8

the lack of candor on the part of the juror during voir dire denied defendant his right to make an intelligent decision as to whether to challenge the juror for cause, exercise a peremptory challenge, or accept the juror." *Id.* The division reasoned that "[a] defendant has the right to exercise all of his peremptory challenges, and when a juror misrepresents or conceals material and relevant matters, that right, as well as the right to challenge for cause, is impaired." *Id.*

¶ 17 Finally, in *Rael*, 578 P.2d at 1068, the defendant was on trial for burglary and an empaneled juror failed to disclose his own burglary conviction during voir dire. The division held that "[a] juror who misrepresents or conceals material and relevant matters is guilty of misconduct, and it may be prejudicial to either or both parties because it impairs the right to challenge for cause or peremptorily." *Id.* (citation omitted). The division concluded that prejudice to the defendant was presumed in that case and a new trial was required because the "defendant [was] denied the right to exercise his peremptory challenge as to [the juror who committed misconduct]." *Id.*

¶ 18 Although we agree with Arrington that there is broad language in the cases to support that a juror's intentional concealment of

9

information may be presumptively prejudicial, Arrington's interpretation appears to read out that the information concealed by the juror must also be material. While a juror's deliberate misrepresentation is "itself evidence that the juror was likely incapable of rendering a fair and impartial verdict in the matter," it is not in and of itself dispositive evidence that such a juror *would be* incapable of being fair and impartial. *Dunoyair*, 660 P.2d at 895. We conclude that it is within a district court's discretion to make the final determination of whether a juror is incapable of rendering a fair and impartial verdict in light of the nature of the intentional nondisclosure and its materiality in the context of the case.

¶ 19 At the evidentiary hearing on Arrington's motion for a new trial, juror B.C. testified that he interpreted the question posed about prior criminal history to encompass only cases resulting in criminal convictions and this is why he did not disclose the two cases in which he had been charged but not convicted of the offenses. As to his shoplifting case in which he was convicted, he testified that he had "completely forgotten it."

¶ 20 The court concluded that B.C. "was credible in some respects, but not in others." As it relates to the two cases in which he was

not convicted, the court found B.C. "credible that he misunderstood the Court's question regarding involvement in the criminal justice system; namely, that he mistakenly believed the Court's inquiry did not extend to dismissed cases."[3] But it did not find him credible about his failure to disclose his shoplifting conviction because he "was arrested in the presence of his partner and child and placed in a holding cell at a mall," he attended several court appearances and completed a class and community service, and he testified that the experience was "traumatic." Based on all this, the court found that "[i]t did not logically follow that juror B.C. completely forgot about this entire event." The court concluded that B.C. "intentionally concealed" his shoplifting conviction.

¶ 21 Despite the court's finding, though, the court determined that it must then analyze whether "juror B.C. was likely incapable of rendering a fair and impartial verdict in Mr. Arrington's trial." It held that, while it was "deeply troubling" that B.C. did not disclose the information consistent with the court's oath, the nondisclosure

---

[3] Arrington does not challenge the court's ruling as to B.C.'s nondisclosure of his two criminal cases that were dismissed because the court found that his nondisclosures were inadvertent.

11

involved a "case . . . remote in time, minor, [and] dissimilar to the allegations against Mr. Arrington" and, therefore, the case could not "conceivably have created any likelihood that juror B.C. . . . harbor[ed] a prejudice against" Arrington. The court reasoned that based on B.C.'s testimony, instead of the nondisclosure evidencing an inability to be fair and impartial, the "more logical [conclusion] would be an inference that juror B.C. failed to disclose the experience because he was ashamed of it, and this is indeed the inference that the Court draws."

¶ 22 The district court's findings and conclusions are consistent with the case law. Our reading of a materiality component as part of a juror's intentional nondisclosure is based on the outcomes in those cases. In *Borrelli*, 624 P.2d at 903, the division found the intentional nondisclosures material and, therefore, prejudicial because the juror was being treated by the psychiatrist-witness — as opposed to the doctor simply being an acquaintance of a relative — and taking specific drugs that, if known to the parties, might have impacted the parties' perception of the juror's ability to serve. Likewise, in *Rael*, 578 P.2d at 1068, the division concluded that the juror's conviction for the same offense for which the

12

defendant was accused was intentional and material. And although in *Dunoyair*, 660 P.2d at 895, the supreme court found the juror's disclosure inadvertent, it also concluded "the undisclosed information pertained to a prosecution witness whose testimony was of only peripheral significance to the charge."

¶ 23    Because B.C.'s criminal conviction was dissimilar to the charges faced by Arrington, the district court's conclusions support that B.C.'s conviction for shoplifting, without more, failed to create "an actual bias either in favor of the prosecution or against the defendant." *Id.* at 896. We conclude that when the juror's nondisclosure does not by itself evidence animus or an inability to be fair and impartial — as it did here, given the court's conclusion that B.C. was likely simply ashamed of the prior conviction — there must exist a materiality nexus to the juror's nondisclosure. To not have such a requirement would mean that any juror's intentional nondisclosure — however irrelevant, minor, or distant in time to the criminal charges or to the circumstances of the case — would result in reversal of a defendant's criminal conviction without a finding that the juror could not be fair and impartial. The cases do not support that. Otherwise, *Rael* and *Borrelli* would not have needed

13

to discuss the nature of the intentional nondisclosure at all but could have simply held the juror acted intentionally regardless of the type of information withheld.

¶ 24     Therefore, we conclude that the district court did not abuse its discretion by denying Arrington's motion for a new trial.

### III.    Due Process and Equal Protection

¶ 25     Arrington argues his conviction for unlawful sexual contact (force) under section 18-3-404, C.R.S. 2025, is unconstitutional, both facially and as applied, because he was sentenced more harshly than a similarly situated person convicted of a more serious offense would have been, violating his due process and equal protection rights.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 26     We review questions of statutory interpretation and construction de novo.  *See People v. Bruno*, 2014 COA 158, ¶ 6.  A party "challenging a statute on constitutional grounds bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt."  *People v. Hicks*, 262 P.3d 916, 919 (Colo. App. 2011).

¶ 27  No state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection of the laws "assures the like treatment of all persons who are similarly situated." *Dean v. People*, 2016 CO 14, ¶ 11. The due process clause of the Colorado Constitution implies "a similar guarantee." *Id.*; *see* Colo. Const. art. II, § 25. Colorado's guarantee of equal protection is violated when "two statutes proscribe similar conduct, yet the scheme imposes the harsher penalty for acting with intent to cause, or for actually causing, a less grievous result." *Dean*, ¶ 15. Unless a suspect classification or fundamental right is implicated, equal protection is not violated "so long as the legislative classification is not arbitrary or unreasonable, and the differences in the provisions bear a reasonable relationship to the public policy to be achieved." *Id.* at ¶ 16. Put simply, equal protection is not violated when "differences in treatment are rationally justified." *Id.* When analyzing these claims, courts "compare[] the relative severity of sentences by reference to the maximum possible period of incarceration, not the timing of parole eligibility." *People v. Maloy*, 2020 COA 71, ¶ 17 (quoting *Dean*, ¶ 10).

## B.  Analysis

15

¶ 28    Arrington contends that the sentencing scheme for unlawful sexual contact (force) in section 18-3-404 is harsher than that of the more serious offense of sexual assault in section 18-3-402, C.R.S. 2025.  We disagree.

¶ 29    Both unlawful sexual contact and attempt to commit sexual assault require proof that the defendant "knowingly" engaged in, or attempted to engage in, nonconsensual sexual activity — the former requiring proof of sexual contact, the latter attempted sexual intrusion or penetration.  § 18-3-404(1); § 18-3-402(1); *see* § 18-2-101(1), C.R.S. 2025 (defining criminal attempt to commit a crime).  If the offense is committed by force, unlawful sexual contact is elevated to a class 4 felony, § 18-3-404(2)(b), while sexual assault is elevated to a class 3 felony if committed by force,[4] § 18-3-402(4).  Both are considered "sex offenses," for which the Colorado Sex Offender Lifetime Supervision Act applies.  § 18-1.3-1003(5)(a)(I)(A), (5)(a)(III)(A), (5)(b), C.R.S. 2025; § 18-1.3-1004, C.R.S. 2025.

---

[4] Here, it was not put before the jury whether Arrington's attempted sex assault was committed by force, so it was sentenced as a class 5 felony.

¶ 30 The chart that follows summarizes relevant components of the statutory sentencing scheme for unlawful sexual contact (force), a class 4 felony, and for sexual assault (force), a class 3 felony:

|  | Unlawful Sexual Contact (force) | Sexual Assault |
| --- | --- | --- |
| Sentencing Range[5] | 4-12 years to life | 4-12 years to life |
| Aggravated Range[6] | N/A (already aggravated) | 4-24 years to life |
| Parole[7] | 10 years to life | 20 years to life |
| Probation Eligibility[8] | None | 20 years to life |

¶ 31 While Arrington points out that a probationary sentence is precluded for an unlawful sexual contact (force) conviction but is permitted for a sexual assault (force) conviction, this fact is not dispositive to our analysis. Rather, as Arrington correctly notes in his brief, we are to compare the "relative severity of sentences by reference to the *maximum possible period of incarceration*, not the

---

[5] § 18-1.3-401(1)(a)(V.5)(A), (6), (8)(a), C.R.S. 2025 (providing the presumptive sentencing ranges for each class of felonies); § 18-1.3-1004(1)(b), (2), C.R.S. 2025 (outlining the minimum and maximum sentences for felony sex offense that constitute crimes of violence).

[6] § 18-1.3-406(1)(d), (2), (6), C.R.S. 2025 (providing mandatory minimum sentences for crimes of violence, which includes offenses committed using force).

[7] § 18-1.3-1006(1)(b), C.R.S. 2025 (providing the parole terms for class 2, 3, and 4 felony sex offenses).

[8] § 18-1.3-1004(2)(a) (outlining probation eligibility for class 2, 3, and 4 felony sex offenses).

timing of parole eligibility" for the equal protection analysis. *Dean*, ¶ 10 (emphasis added).

¶ 32 Here, the maximum possible period of incarceration as to both charges is a life sentence in the custody of the DOC. *See* § 18-1.3-406(1)(d), C.R.S. 2025. And while the initial sentencing ranges for the two convictions are both four to twelve years to life, the aggravated range for a sexual assault (force) conviction is harsher compared to that for an unlawful sexual contact (force) conviction, which is already in the aggravated range. *See* § 18-1.3-401(1)(a)(V.5)(A), (6), (8)(a), C.R.S. 2025. The parole period for sexual assault (force) is also harsher than that of unlawful sexual contact (force), as it is twice as long. *See* § 18-1.3-1006(3)(a).

¶ 33 While one component — probation eligibility — of the sentencing scheme for unlawful sexual contact (force) is harsher than that for a sexual assault (force) conviction, other components are less harsh. *See People v. Nguyen*, 900 P.2d 37, 41 (Colo. 1995) (noting that the supreme court has consistently held that when the legislature provides the same penalty for different crimes there is no equal protection violation). And as it relates to probation specifically, the supreme court has noted that, because probation is

18

an alternative sentence that must be consented to by the defendant, so long as the defendant remains subject to the same minimum or maximum statutory sentences, equal protection is satisfied. *See People v. Smith*, 2014 CO 10, ¶ 18 n.4; *see also People v. Garberding*, 787 P.2d 154, 157 (Colo. 1990) ("Equal protection requires only that the minimum and maximum sentences imposed by the statute — not the judge— are the same for all persons charged with the same or similar offenses; the individual treatment of each defendant within the limits of the sentence provided is within the sentencing court's discretion.").

¶ 34 Under these circumstances, we cannot say, beyond a reasonable doubt, that the sentencing scheme for unlawful sexual contact (force), as compared to that for sexual assault (force), is unconstitutional, either as applied or facially. *See Hicks*, 262 P.3d at 919. Thus, we affirm the district court's denial of Arrington's motions to dismiss and vacate his unlawful sexual contact (force) charge and conviction.

## IV. Sentencing

¶ 35 On cross-appeal, the Attorney General asserts that the district court erred by sentencing Arrington to concurrent sentences

because consecutive sentencing was mandated by statute.[9] We agree that Arrington's kidnapping offense should have been consecutively sentenced with his two sex offense convictions.

### A. Additional Facts

¶ 36 The district court found that the jury was asked to answer the question — "Was the person kidnapped also the victim of another specified crime?" — as part of the kidnapping charge. It reasoned that because the jury answered this question in the affirmative, this meant that Arrington's conduct underlying the charges of unlawful sexual contact (force) and attempted sexual assault were subsumed into the kidnapping charge. It also found that the factual evidence supporting the unlawful sexual contact (force) and attempt to commit sexual assault charges was identical. Consistent with these findings, the district court found it was obligated to impose concurrent sentences.

### B. Standard of Review and Applicable Law

---

[9] The Attorney General's cross-appeal is unclear as to whether it seeks to have all three sentences run consecutively, or whether it contends that Count I (kidnapping) should run consecutively to Counts II (unlawful sexual contact) and III (attempted sexual assault). We conclude that Arrington should be sentenced consecutively for Counts I and II, and concurrently as to Count III.

20

¶ 37    We review a district court's application of mandatory sentencing laws de novo. *See People v. Torres*, 224 P.3d 268, 277 (Colo. App. 2009).

¶ 38    Unless multiple victims are involved, concurrent sentences must be imposed "when multiple convictions are based on the same act or series of acts arising from the same criminal episode, *and are supported by identical evidence.*" *Id.* (emphasis added); *see* § 18-1-408(3), C.R.S. 2025. But section 18-1.3-1004(5)(a) requires that "[a]ny sex offender . . . convicted of one or more additional crimes arising out of the same incident as the sex offense shall be sentenced for the sex offense and such other crimes . . . consecutively rather than concurrently."

¶ 39    In determining whether convictions were supported by identical evidence, we look to whether "the acts underlying the convictions were sufficiently separate." *Thompson v. People*, 2020 CO 72, ¶ 60. This inquiry requires us to determine whether "the separate convictions were based on more than one distinct act and if so, whether those acts were separated by time and place." *Id.* (quoting *Juhl v. People*, 172 P.3d 896, 901 (Colo. 2007)). We are to "focus on the evidence that supported the convictions, not on the

21

evidence necessarily required to prove the elements of those convictions." *Id.* If the evidence can support "no reasonable inference that the [multiple] convictions were based on acts that were separated by time or place, then the concurrent sentencing statute applies." *Torres*, 224 P.3d at 277.

## C.    Analysis

¶ 40    Both parties agree that the critical determination for this issue is whether Arrington's convictions were supported by identical evidence. If so, concurrent sentences were required and correctly imposed; if not, consecutive sentences, as advanced by the Attorney General, were mandated. *Id.*; § 18-1-408(3); § 18-1.3-1004(5). The district court sentenced Arrington concurrently because it determined that Arrington's three convictions were supported by identical evidence. We disagree and therefore remand the case to the district court for imposition of consecutive sentences with respect to Arrington's kidnapping conviction and unlawful sexual contact (force) conviction. The attempted sexual assault conviction should be served concurrently. We reach this conclusion for two reasons.

¶ 41    First, the district court incorrectly determined that the question posed to the jury relating to the kidnapping meant, for purposes of its sentencing analysis, that the facts underlying the unlawful sexual contact (force) and sexual assault convictions were subsumed into the kidnapping conviction. But we read the question's purpose to be determining whether Arrington was subject to a sentence enhancer, not determining whether another crime that had been committed as part of the kidnapping was an element of the offense.

¶ 42    Jury Instruction No. 11 for second degree kidnapping laid out the elements of that offense. If the jury found that the prosecution had proved beyond a reasonable doubt that Arrington had committed second degree kidnapping, then Jury Instruction No. 12 asked the jury the following:

> Was the person kidnapped also the victim of another specified crime? (Answer "Yes" or "No")
>
> The person kidnapped was also the victim of another specified crime only if:
>
> 1. the person kidnapped was the victim of the crime of Unlawful Sexual Contact or Criminal Attempt to Commit Sexual Assault.

On the jury verdict form, the jury answered "yes."

23

¶ 43    Jury Instruction No. 12 outlined a sentence enhancer that is

not an element of the offense to second degree kidnapping.  *See*

*People in Interest of B.D.*, 2020 CO 87, ¶ 15.  In effect, the district

court concluded that the sentence enhancer was necessarily

supported by all of the evidence in the case, as the jury concluded

that L.M. was the victim of another specified crime, requiring it to

consider the evidence underlying the other convictions.  And

because, the district court reasoned, the kidnapping conviction

required consideration of all of the evidence in the case, it was

based on identical facts as the other convictions.

¶ 44    This reasoning is not consistent with the case law.

Specifically, sentence enhancers do not necessarily render

consecutive sentencing improper.  *See People v. Glasser,* 293 P.3d

68, 78 (Colo. App. 2011) (affirming consecutive sentences for sexual

assault and kidnapping despite the kidnapping charge being

enhanced because of the sexual assault charge); *People v. Jurado,*

30 P.3d 769, 772-73 (Colo. App. 2001) (same).  While the jury might

have been asked to consider the overall evidence for purposes of

answering Jury Instruction No. 12, this consideration is not the

same as a court's inquiry as to whether consecutive sentencing applies.

¶ 45    Instead, the court was to determine whether Arrington's convictions were supported by identical evidence, requiring it to focus on "the evidence that supported the convictions, not on the evidence necessarily required to prove the elements of those convictions." *Thompson*, ¶ 60. And here, the evidence supporting the kidnapping charge was L.M.'s testimony that Arrington pushed her into the store's bathroom from where she had been standing by the cash register, which was different from the evidence supporting the other two sexual offense charges — her testimony that Arrington touched her vaginal area without her consent and tried to move her pants and underwear. The district court incorrectly focused its analysis on the sentence enhancer component of Arrington's kidnapping conviction instead of analyzing the evidence presented that supported the underlying conviction.

¶ 46    Second, while Arrington highlights that the attack took place over a short period of time, just a few minutes, this fact is not

dispositive.[10]  Rather, courts have held that even separate convictions occurring in relatively quick succession over a short period of time have been held to be sufficiently separate for sentencing determinations.  *See Jurado*, 30 P.3d at 773 (affirming consecutive sentences because, despite the offenses being part of a continuous course of conduct and sharing some elements of proof, they were not supported by identical evidence); *see also Qureshi v. Dist. Ct.*, 727 P.2d 45, 47 (Colo. 1986) (same).

¶ 47    Here, Arrington's acts were separated by time and place such that they were sufficiently distinct acts: First, the unlawful sexual contact and attempted sexual assault occurred in the area behind the store's cash register area, then the kidnapping followed in the store's bathroom.  Even if the events happened close in time and in place, the sexual offense acts were nonetheless sufficiently distinct such that they did not share identical evidence with the kidnapping offense.  *See Thompson,* ¶ 60.  But the sexual offense acts were not

---

[10] The parties dispute how long the attack lasted.  Arrington claims that it took place in under two minutes, while the Attorney General claims it lasted closer to five or six minutes.  The record is unclear on this issue, but any difference is de minimis for purposes of our analysis.

sufficiently distinct in time and place such that they support sentencing Counts II and III consecutively.

¶ 48 Therefore, we conclude that the district court erred by sentencing Arrington concurrently rather than consecutively and remand the case to the district court for resentencing so that the kidnapping conviction runs consecutively with the two sexual offense convictions.

## V. Conclusion

¶ 49 The judgment of conviction is affirmed, but we reverse the court's sentencing order and remand the case to the district court for resentencing so that the kidnapping sentence runs consecutively with the two sexual offenses' sentences.

JUDGE PAWAR and JUDGE GOMEZ concur.